PATTERSON *vs.* BONNER ET AL.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE PARISH OF RAPIDES, THE JUDGE OF THE FIFTH PRESIDING.

Where a judgment of a court of competent jurisdiction stands unappealed from and is final, it is conclusive on all the matters embraced in it: whatever may be the errors or injustice done by it, it forms *res judicata*, and cannot be re-examined.

In a sale with a defeasible condition (*vente à rémérè*), it rests solely on the will of the vendor to dissolve the contract, and his expression of that will must have the same effect as the will of both parties in creating the contract.

So, where the vendor in a sale, with a defeasible condition, in the presence of two witnesses, offered to repay the price and redeem the property within the time limited, which was refused, and he made no consignment of the money : *Held*, that this was a sufficient notification to the vendee of the intention to redeem and preserve to the vendor his right of action to dissolve the contract after the term had elapsed.

Although the right of redemption is preserved to the vendor, of his intention and readiness to redeem, within the time limited, yet, without a consignment or tender of the money, he is not entitled to the fruits or profits.

In a *vente a rémérè*, where the vendee has possession and enjoys the fruits or profits of the property, a stipulation to pay ten per cent. interest on redemption and repayment of the price, will be deemed illegal.

This is an action to recover twenty-four slaves *and their increase,* together with three thousand dollars a year hire, and five thousand dollars in damages, for their illegal detention by the defendant. Also, for an injunction to restrain the execution of a judgment which Mrs. Bonner had obtained against the plaintiff, and was proceeding to sell his property thereon.

· The plaintiff shows that on the 18th March, 1825, he sold to the defendant, Mrs. Rosanna Bonner, twenty-four slaves, by notarial act, for the sum of seven thousand nine hundred and twenty-two dollars, for which he received her notes, payable by instalments; the last falling due the first of

March, 1828.  The sale is absolute in its form, but there is
a memorandum appended to it in the following words:

" It is agreed, that the said Thomas Patterson shall have
the privilege of redeeming the negroes mentioned within, at
any time within three years after the last instalment shall
have been paid, by *repaying* the price, as expressed within, to
the said Mrs. Rosanna Bonner, her heirs and assigns, with
interest on the same at ten per cent. per annum from the
time such payment shall have been made till such redemp-
tion shall take place.   In testimony whereof the parties
hereto subscribe their names, this 18th day of March, 1825.

" THOMAS PATTERSON,

" ROSANNA BONNER."

The plaintiff alleges, that it was expressly understood at
the time of making this instrument that he was to retain
possession, and have the services of said slaves, to enable
him to pay the amount which would be due the defendant
for their redemption.   That he did remain in possession for
nearly three years ; and when the defendant obtained pos-
session, she agreed that interest should not run on the sum
he owed her.   That the services of the negroes were worth
more than the interest due.

He further states, that in February, 1834, he made the
defendant a tender of the amount due her, and still tenders
the same ; and that he made a demand for the slaves in
pursuance of their contract, and that she refused to receive
the amount due her, and deliver the slaves, as she was
bound to do ; in consequence of which refusal he has suffered
damage to the amount of five thousand dollars.   That
defendant has had possession of the negroes from the 14th
February, 1828, until the present time, and that their ser-
vices are worth three thousand dollars per annum, and have
been worth this sum ever since she obtained possession, which
amounts to eighteen thousand five hundred dollars.

He further states, that notwithstanding the premises, the
defendant has issued an execution on a judgment she had
against him for one thousand nine hundred and ninety-two
dollars, and is proceeding to sell his property.   He prays that

WESTERN DIST.
October, 1839.
──────────
PATTERSON
vs.
BONNER ET AL.

the defendant be condemned to deliver up all of the said slaves *and their increase*, or their value, estimated at twenty thousand dollars. That in the alternative of delivering the negroes, that she be condemned to pay the sum of five thousand dollars in damages. He further prays, that she also be condemned to pay the sum of eighteen thousand five hundred dollars as the hire of said slaves, deducting the amount that may be due to her under their agreement. He prays for a writ of injunction to restrain the sheriff from proceeding on the execution against him, and for general relief.

The defendant excepted, and says, that the suit has been prematurely instituted, and should be dismissed.

She pleaded a general denial, and averred, that no legal tender or demand was ever made, and that no right of redemption ever existed, but if it ever did, the time within which it might have been claimed had expired before this suit was instituted.

She further says, the same matters have been adjudged between them in a former suit, the judgment in which is not appealed from, and which she pleads as *res judicata*.

She prays, that the injunction be dissolved, with interest and damages. But if the plaintiff receives the slaves, then she prays that he be condemned to pay her twenty thousand dollars, as a condition precedent, with ten per cent. per annum, the amount that will be justly due her.

Upon these pleadings and issues the cause was tried by a jury.

At the time of executing the sale, the 25th March, 1825, the slaves were allowed to remain in the possession of the vendor, and remained in his possession until December, 1827, when Mrs. Bonner recovered a judgment, decreeing her the possession, and one thousand and twenty dollars a year, from the 18th March, 1826, until the slaves were delivered to her, as damages occasioned by their detention, and that she have a writ of possession. The possession of the slaves was delivered in February, 1828.

*William Justice* sworn, says, that Mr. Patterson, after the sale of the slaves, kept possession of them upwards of two

years.   An agreement was made between plaintiff and de-
fendant, that the former was to put the negroes in controver-
sy, in with those of the defendant, and draw a share of the
crop in proportion to his force, and the debt he owed the
defendant was to be paid in that way.   This was in 1826, or
1827, while witness was overseer for defendant.   The
negroes were to work and the proceeds were to be placed to
the plaintiff's credit until the debt was paid.   The agreement
was broken off because witness would not consent as the
manager of defendant, to take charge of these negroes, &c.

*R. W. Kay* states, that in March, 1827, Patterson sent
his negroes to witness's plantation, and he made a crop with
them of fifty or sixty bales of cotton; that he and Patterson
had contemplated working their hands together a series of
years, and the proceeds of the crop to be applied principally
to the payment of the debt Patterson owed to Mrs. Bonner.
That the following winter the slaves were taken out of
Patterson's possession.

*J. B. Scott* sworn, says, that two of the notes given by
Mrs. Bonner to Patterson, were transferred to Judge Miller,
and the last one to Madame Meullian.   The last note was
paid, one half in 1831, and the other half in 1832.   Plaintiff's
first wife was a daughter of Mrs. Bonner.   Witness says,
that prior to the payment of the last notes, he went to Mrs.
Bonner to redeem the negroes in controversy, and proposed
to pay her the first note ; and pay her the amount plaintiff
owed her, and release her from the two remaining notes.
She said if Patterson would come and pay her the money
himself, he could redeem the negroes, but that if any person
was to be benefited by the transaction except Patterson, it
might as well be her as any one else.   This was after the
sheriff had delivered her the possession of the negroes in
1828.

Witness says, on cross-examination, " he made no tender
of the money to Mrs. Bonner, but was authorized to pay the
amount of the debt due by Patterson, as acknowledged in
the deed, and the amount she had paid on the first note, and
restore the other two notes to her.   In making the proposi-

tions to Mrs. Bonner, to redeem the negroes, witness proposed to place her in the same situation as she would have been in if she had paid no money on the notes, and pay her the money which Patterson owed her, as contained in the deed. So far as witness knows, Patterson knew nothing of the proposition to redeem at the time it was made. Witness had control of two of the notes at the time."

(The testimony of all these witnesses was excepted to; Scott's, because he was surety in the injunction bond, and Justice and Kay's, because parole evidence was alleged to be inadmissible to prove any thing under the contract.)

*Burney*, sworn, says, the negroes are valuable, and, from 1828 to 1832, were worth fifteen hundred dollars per year, and from that time to this, two thousand dollars. There are no better negroes in the parish; he would be willing to give thirty thousand dollars for them and their increase. He and William Brown went, with Patterson, the 24th of February, 1834, to Mrs. Bonner. Patterson told her he had come to pay her the money he owed her for the redemption of the negroes: she said, she could have nothing to do with it; that she had given up the business to her children, and any thing they would do she would be satisfied with. Patterson then applied to Mr. Bonner, the son, but they came to no conclusion. Brown testifies to the same facts in substance."

After the evidence was gone through, the judge charged the jury as follows:

"This is an action to redeem the slaves mentioned in the act of sale from Patterson to Bonner. That act, on the face of it, appears to be a sale of the slaves to Mrs. Bonner, and, by its effect, transfers the legal title to her; but a condition, or stipulation, is annexed to the sale, which gives to the plaintiff the right to redeem the slaves on refunding the money advanced to him, with interest, as therein mentioned, provided he did so within the time limited for that purpose. In order to entitle himself to redeem the slaves, the plaintiff, by the act, is bound to repay the price of the slaves, with ten per cent. interest at any time within three years from the

time the last payment should he made by her for the slaves. Has he made this payment within the time limited? If he has not made that payment, has he made a tender of payment, and demanded the return of the slaves within the time? If he has, he is still entitled to redeem the slaves. On this point, I am of opinion, that if the sum due was unsettled, and if he applied to the vendee and requested a settlement of accounts, and offered and declared himself ready to pay the balance due, and the vendee refused to settle, or to receive the money, this will be a good tender to preserve his right to redeem the slaves; and I think he will be entitled to their profits from that time. It is insisted by the plaintiff, that the sale, with the condition annexed, is nothing more than a security for the re-payment of the price of the slaves, with the interest thereon, and that, consequently, the plaintiff is entitled to the revenues of the slaves; but this point, it is insisted on the other side, has been decided by the former judgment of court between these parties, which is in evidence. That decision certainly gives to her the possession of the slaves, and also a right to the revenues, i. e., to receive them as they accrued, but does not give her the absolute right to retain them finally to her own use; or only to receive them according to the terms of the contract. This the judgment does not decide, nor does it at all foreclose the plaintiff's right of redeeming the slaves. These points, therefore, remain open, and must be decided according to the terms of the contract: and this makes it necessary to consider the nature of the contract. On this a question arises which is important, and which is this: Was the vendee, Mrs. Bonner, after the passing of the conditional sale to her, entitled to the profits arising from the use and employment of them for her own benefit? or was the vendor, the plaintiff, entitled to these profits? This will depend on the nature of the act in question, and to ascertain this we must inquire what was the intention of the parties on passing the act; and for this purpose we must look into and consider the nature of the act itself. Was it, then, the intention of the party to transfer the right of property in the slaves to the vendee, or was it

their intention that the conditional sale should stand only as a security for the repayment of the money which the vendee bound herself to pay for the plaintiff? If the former, then the vendee became entitled to the profits arising from the use of the slaves; if the latter, and the act was intended only as a security for the repayment of the money, then the plaintiff is entitled to the profits. This question you will decide on the evidence.

"I consider it clear, that, so long as the time limited for redeeming the slaves endures, the vendor has a right to redeem; and if he does redeem them, the conditional sale has no other effect than that of its being a security for the repayment of the money advanced to the vendor. If the vendor brings his suit to redeem within the time, the jury are bound to consider the sale as such security, and nothing more. What, then, is the amount which the vendor is bound to pay, on redeeming his property? If the vendee has had possession of the property, which yields fruits, and has enjoyed all the profits arising from the use of it, can she moreover claim the highest rate of interest allowed by law on the money advanced? I am clearly of opinion she cannot, for that would unquestionably be usurious. She is not entitled to both; but, in this case, she has stipulated for interest to be paid to her on the money she advanced. Has she not thereby herself decided this point, by prescribing the terms on which these slaves might be redeemed, to wit, on refunding to her the money, with ten per cent. interest. If, on the whole view of the case, the jury are convinced such was the intention of the parties at the time of entering into the contract, then the parties are bound by that stipulation; and, in that case, the defendant will be entitled to the money that was advanced to the plaintiff, with ten per cent. interest, and nothing more. If the profits arising from the use of the slaves amount to more, she must refund the overplus; if less, the plaintiff must make up that amount, in order to entitle himself to redeem."

To this charge the defendant's counsel excepted, and requested the judge to give the following, in charge to the jury:

" 1. That this is a *vente à rémére,* and the jury must be governed by the articles.of the Civil Code of 1808, in reference to such sales.

" 2. That the defendant is entitled to the services of the slaves until the purchase money has been reimbursed, or tendered and consigned.

" 3. That the reimbursement of the purchase money, or the tender and consignment thereof, is in the nature of a condition precedent, and must have been performed before the institution of this suit; otherwise there must be a verdict for the defendant.

" 4. That the plaintiff, in order to maintain his action, must show an actual payment of the purchase money, or a lawful tender thereof, before the institution of this suit; and the jury are not authorized, in an action of this kind, to consider the purchase money as paid by the services of the slaves, which services, according to the law which must govern such cases as this, belongs to the vendee until the purchase money shall have been actually paid, or a lawful tender thereof made.

" 5. That the judgment of the court in the case of Rosanna Bonner *vs.* Thomas Patterson is *res judicata* upon the question of the hire or services of the slaves, and that judgment having been pleaded in bar, settled this question in favor of the defendant in this case, and precluded the re-investigation thereof.

" 6. That, in order to constitute a lawful tender, it must have been made to the vendee herself, or at her domicil, or to her agent, by the plaintiff or his agent, in the presence of two witnesses residing in the place, by tendering the purchase money, and exhibiting the same to her or her agent in the current coin of the United States, according to article 407 of the Code of Practice."

Each of these propositions were severally refused, by the judge presiding, to be given in charge to the jury, to which refusal the defendant's counsel took his bill of exceptions.

The jury returned the following verdict: " We, of the jury, find for the plaintiff the sum of six thousand four hun-

WESTERN DIST. dred and nineteen dollars, which is the amount due said
October, 1839. plaintiff, after deducting the amount of judgment and in-
PATTERSON     terest obtained by Mrs. Bonner against the plaintiff in 1827,
vs.           together with all the said slaves that are living, and their
BONNER ET AL. increase, and costs of court."

After an unsuccessful motion by the defendant's counsel
for a new trial, judgment was rendered confirming the ver-
dict decreeing to the plaintiff the slaves, and giving him the
sum of six thousand four hundred and nineteen dollars, as
the net balance due him for their hire, and perpetuating the
injunction staying the enforcement of the judgment, &c.
From which the defendant appealed.

*Elgee* and *Dunbar*, for the plaintiff.

1. We contend, that although this is a sale absolute on
the face of it, it in truth partakes of the nature of *a vente
à réméré*, known to the French law as a *Contrat Pignoratif*, or
pledge for the loan of money ; usurious in its nature, and
consequently null. See *Merlin, Questions de Droit ; Contrat
Pignoratif, page* 278 *et seq. Questions Faculté de Rachat, page*
108. 9 *Duranton*, 430. ,

2. The situation of the parties should be examined into.
One was debtor, the other creditor. One was in urgent
want of money, the other lent her name. The property was
sold far below its value.

3. Every stipulation that the pledge shall belong to the
creditor on failure of payment is *null*. The French Code and
ours are the same on this point; and from this, Duranton
deduces the illegality of the *Contrat Pignoratif.* See *Code
Napoleon, articles* 2078, 2088. *Louisiana Code,* 3132, 3146.

4. If the object perished, the loss, Duranton says, would
be the lenders. He sought to evade the law. 9 *Duranton,
No.* 431.

5. This is not a contract of insurance. The security was
very good, the best next to lands. Even lands may be
destroyed by earthquakes, &c.

6. Parole evidence properly admitted to prove collateral
facts ; more especially when there is simulation in the

contract, as here. 7 *Louisiana Reports*, 331. *Louisiana Code*, 2267.

7. To allow the defendant ten per cent. interest, and the use or hire of the slaves, would be usurious; consequently, the contract would be null and void. 3 *Louisiana Reports*, 393. 4 *Martin*, 165. 4 *Kent's Commentaries*, 136. 1 *Vernon*, 476. *Pothier*, 416, 417. *Contrat de Vente*, 9 *Duranton, No.* 424. The fruits are the interest.

8. In a true *vente à réméré* both parties must be placed in the situation they occupied prior to the sale, *est potius distractus quam novus contractus*. *Pothier, Contrat de Vente*, 411. We show by calculation, that Mrs. Bonner would have received thirty-seven thousand dollars for the loan of eight thousand dollars, whilst Patterson would only receive his negroes.

9. No tender was necessary; we owed nothing, even if it was. *Pothier*, 410. *Paillett, on article* 1673. *Sirey, on articles* 1662 *and* 1673. *Troplong, pages* 374, 720. A mere verbal notification is all that is required.

10. The judgment of 1827, giving Mrs. Bonner the possession of the slaves is not *res judicata*. See 1 *Starkie, marginal note*, 224.

11. The hire of the negroes was fully equal to the annual amount of Mrs. Bonner's notes. The evidence proves this, and the plaintiff is fully entitled to the benefit of the hire of his slaves.

12. The peculiar circumstances of this case, shows that it was intended to cover a loan of money.

1st. Patterson was in distressed circumstances; moreover, he was the *debtor* of the defendant at the time of this contract.

2d. The price was far below the real value of the property. In the contract, it is stated at seven thousand nine hundred and twenty-two dollars, one thousand nine hundred and twenty-two dollars of which was in a debt due defendant by plaintiff. The balance was in notes, *without interest, payable at one, two and three years;* but it appears they were never paid until 1832, *seven years* after the contract. The negroes, in the evidence, are stated to have been worth, at the time of the sale, from *twelve* to *fifteen thousand dollars*.

3d. The slaves, for nearly *three years*, remained in the possession of the vendor.

13. Will the parties be placed in the same position they occupied prior to the sale, if we give the defendant her principal sum and ten per cent. interest thereon, with the fruits and revenues of the slaves; and to the plaintiff, nothing but his negroes?

14. In 1825, Mrs. Bonner had not paid the sum of seven thousand nine hundred and twenty-two dollars; and at the same time Patterson possessed his negroes. In the year 1839, Mrs. Bonner will have received her principal, and eleven years interest thereon at ten per cent., with the hire of the negroes for eleven years, estimated at twenty-seven thousand five hundred dollars, according to the evidence, and nineteen hundred and forty-five dollars the amount of the judgment; making a total of forty-six thousand and seventy-nine dollars, for the loan of *her name* for six thousand dollars, whilst Patterson would only receive back his negroes. Thus, one party would be enriched at the expense of the other *forty thousand dollars*.

15. Defendants contend, that according to *Pothier*, *Contrat de Vente*, 413, they might validly stipulate for a higher price to be repaid by the vendor on his exercising his right of redemption. This is not correct. The stipulation here is to pay *interest*. No increase of the price was contemplated by the parties. Plaintiff was to repay the seven thousand nine hundred and twenty-two dollars, and ten per cent. interest thereon. Had the stipulation been, that he should repay ten thousand dollars on exercising his right, this would have been a *principal sum*, and the question might present some difference. *Troplong*, *No.* 696.   9 *Duranton*, *No.* 429.

*Winn*, for the defendant, argued the case; and submitted a written argument on the same side by *J. Seghers*, counsellor at law, who had been consulted.

For the defendant it was urged:

1. In this case, admitting the jury decided correctly on the evidence before them, and under the charge of the court, yet

the cause must be remanded on the bills of exception. All the parole evidence going to show the intention of the contracting parties, and what the contract is, was objected to as illegal and inadmissible. Bills of exception are also taken to the rejection of evidence ; especially to the rejection of a letter from Patterson to Bonner. This letter made propositions, and showed how he understood the contract. It was rejected on the ground that it made propositions which were never accepted. But it contained declarations favorable to the defendant, and evidence against the plaintiff. Conversations of a party, while a compromise is going on, if they disclose facts, are evidence of those facts. 2 *Starkie*, 38, *note (g.)*

2. The testimony of Scott was illegal ; he being the surety in the injunction bond. According to the act of 1831, section 3, the surety is to be considered a principal in the injunction, and bound *in solido* for the principal, interest and damages on its dissolution. He was, therefore, an incompetent witness.

3. Exceptions were taken to the charge of the judge to the jury, generally, and to his refusal to charge, as requested by the defendant's counsel.

*Mr. Winn* argued at much length to show the errors contained in the charge, and their tendency to mislead the jury ; also, the error in refusing to charge them in the manner asked for. These were urged as strong grounds for setting aside the verdict, and remanding the case for a new trial.

4. The judgment in 1827, decreeing Mrs. Bonner the possession and use of the slaves in question, is relied on as *res judicata* in this case. This suit expressly claimed the ownership and revenues of the slaves under the act of sale in question. Patterson's answer, put at issue all the positions now relied on. This judgment is absolute, giving Mrs. Bonner the quiet and undisturbed possession and ownership of the slaves with their increase, and also a large sum for their back hire up to the time when possession was delivered. Hence we must conclude that the sale was not to secure the repayment of advances, and is not a mortgage. That the fruits and revenues were not to compensate the interest or

principal, but are the irrevocable property of the defendant; and finally, as a corollary, that the acts in question constitute a *vente à réméré* and nothing more.

5. The charge of the judge, and the plaintiff's argument insists, that the stipulation of Patterson to pay ten per cent. interest, before redeeming, changed the character of the act, and that both the revenues and interest could not go to the defendant, or the contract would be usurious and void; but that it was the intention of the parties, that the defendant should have the *interest*, and the plaintiff the *revenues*. To this we oppose again the plea of *res judicata*. The judgment of 1827, forever settles and forecloses this question. It gives, irrevocably, the ownership, possession and revenues of the slaves and their increase to the defendant.

6. Such a contract, too, is permissible. *Pothier, Contrat de Vente, No.* 413, expressly says, that the purchaser may lawfully contract that the vendor shall pay a larger sum than he received, to enable him to redeem; although without this express contract, the returning the principal alone would be sufficient. The right to redeem is limited to a particular period, and the highest rate of interest might be charged, and added to the principal on redeeming. 5 *Merlin's Repertoire du Jurisprudence, verbo, Faculté de Rachat,* page 48, *No.* 8. *Sirey, Codes Annoté,* page 301, *note* 3, on article 1659 *Code Napoleon.*

7. The act of sale being *vente à réméré*, this suit is premature. The right of redemption is in the nature of an obligation, with a condition precedent, and the plaintiff must show performance on his part within the time stipulated; otherwise he cannot redeem; and that performance must be carried into effect before instituting suit. *Civil Code of* 1808, page 272, *articles* 68, 76. *Ibid.*, 364, *articles* 106, 107. *Ibid.*, 362, *articles* 93, 94. 3 *Martin, N. S.* 531. 7 *Ibid.*, 277. 4 *Kent's Commentaries,* 125.

8. There has been no payment or return of the price here, unless the fruits and revenues are to be considered as belonging to plaintiff, and as absorbing the debt. Neither has there been a tender. The only evidence touching this point

is that of two witnesses, (Burney and Brown,) which shows that none was, in fact, ever made, as required by law. *Code of Practice,* 404, 407, 418. *Louisiana Code,* 2163. 3 *Starkie,* 1390, *and note (u.) Ibid.,* 1393–4.

9. Not only a tender is necessary, but if not accepted, an actual consignment of the money must be made. If the money has not been tendered or consigned, it is now too late. The time fixed has expired. *Louisiana Code,* 2564. *Civil Code of* 1808, *page* 364, *article* 106. *Pothier, de Vente, No.* 410. 5 *Merlin's Repertoire, &c., verbo, Rachat, page* 48.

*J. Seghers,* considered this case as involving two inquiries:

1. What is the true character of the transaction, and is it not a valid sale with benefit of redemption ?

2. Is not the right of the vendee to take the fruits *of the essence* of such a contract ? and is not Madame Bonner entitled to the revenues of the slaves until the consideration is refunded, with interest ? or the money tendered and consigned ?

I. The Roman law is plain on these points. See *pacto de Retrovendendo, Digest, lib.* 19, *tit.* 5, *l.* 12. *Code, lib.* 4, *tit.* 54, *l.* 2. The Spanish law is in accordance. *Matienzo* says, that the *pact de Retrovendendo* may be inserted in the sale, or entered into soon afterwards, and that, in such case, the fine due the state can be exacted but once, there being in fact but one contract, which is a perfect sale, making the vendee the owner of the thing sold, and entitled to its fruits. "Where the sale is annulled by the *pact de Retrovendendo,* inserted, either in the sale itself, or made *soon after,* so that it may be considered as part of the contract, the fine is due for the first sale which was perfect, notwithstanding the *pact* be entered into in direct terms ; and on account of that sale the vendee enjoys the fruits, and may sell and transfer to another person, but no other fine is due. A sale with that *pact* is true, absolute and perfect sale, since, by tradition, the vendee is the owner, and makes the fruits his own, *and is not bound to restore them to the vendor after redemption.* It is thereby proved that the sale is pure, and not conditional ;

otherwise, the vendee could not have the fruits." See *Matienzo, lib. 5, tit.* 11, *Law* 7, *gloss.* 3, *No.* 22, *and gloss.* 6, *No.* 42. *Code, lib.* 4, *tit.* 54, *law* 2.

*Gomez* says, "that if one buys with this *pact* that (if within a limited time the vendor repays the price, the vendee was bound to restore the thing,) then should the vendor pay, the purchaser will restore the object, and the sale will be avoided. But the vendee is not bound to give back the fruits gathered in the interval; but only those gathered after the payment, *or consignment of the money.*" This is in accordance with the common law, and in *forum conscientio.* The vendee enjoys the fruits, as having a good title. 2 *Gomez,* 415, *No.* 27 and 28. The text is plain in the *Code, lib.* 4, *tit.* 54. The ordinary glossary and all the commentators explain it so, as well as *Partida,* 5, *tit.* 2, *law* 42.

II. If any doubt could remain, our own laws are explicit on the subject. It is expressly stated, that when a vendor exercises the right of redemption, he becomes entitled to all the fruits not yet gathered, from the day he has either reimbursed or consigned the money paid by the purchaser, unless the contrary has been stipulated. *Louisiana Code,* 2564, 2545, 2551, 2553. *Civil Code of* 1808, *page* 363–4, *articles* 91, 97, 106. *Smoot* vs. *Baldwin,* 1 *Martin, N. S.,* 528.

1. The two next inquiries are, first, can the stipulation for the *ten* per cent. interest, change the character of the transaction, or make it other than a *vente à réméré*? or take from the defendant the right to the fruits; and can she not claim the interest and the fruits under the contract?

2. Should not the former judgment operate as *res judicata* as to the defendant's right of possession, and to take the revenues, and fix the character of this transaction as a valid *vente à réméré*?

I. *Pothier, Contrat de Vente, No.* 413, expressly says, that the purchaser may lawfully contract that the vendor shall pay *a larger sum* than he received, to enable him to redeem; although, without such express contract, no doubt that the returning of the principal alone would be sufficient. If a larger sum be stipulated for, there can be no good reason

why that larger price shall not consist of interest. The right to redeem expired at a limited period, and the interest could be easily calculated and added, so as to form a larger sum. See *Merlin's Repertoire, verbo Rachat. Sirey, Code Civil, annoté* on *art.* 1659. *Corarrubias,* a famous Spanish jurisconsult, says, " The seller may be bound by a private agreement to buy the thing by him sold, and for a larger price than he sold himself." See *Febrero, part* 1, *tom.* 2, *cap.* 10, *sec.* 1, *fol.* 377.

II. The plea of *res judicata* should prevail. All the points set up in this case are put at rest by the former judgment in 1827. The issue was on the same pleadings, and the proof required was identical. See 11 *Martin,* 607. 7 *Martin, N. S.,* 438. 2 *Johnson,* 210. 7 *Ibid,* 20. 8 *Ibid,* 34, 38. 10 *Ibid,* 365. 11 *Ibid,* 530.

III. Even should the stipulation to pay interest be deemed usurious, the contract would not be void; the interest alone would be lost. The laws of Spain, affixing a penalty for taking usurious interest, are repealed. *Hermann* vs. *Sprigg,* 3 *Martin, N. S.,* 190. 4 *Louisiana Reports,* 545.

1. The last inquiries are, can the plaintiff maintain an action without refunding the principal, or making a tender and consignment? And is any tender under our laws valid, unless the cash be exhibited?

2. Can this transaction be considered and held to be a mortgage or antichresis? or security in disguise for a usurious loan of money?

I. On the first of these points, the Spanish authorities already quoted are referred to. Our own statutory provisions are positive, that tender and consignment must be made. *Code of Practice,* 404 *to* 418, *and* 142, *et seq. Louisiana Code,* 2163, *et seq.* These authorities are positive, and support the affirmative of the question. Patterson's action was, therefore, premature, he not having made any legal tender and consignment.

II. On the last point urged, it is evident this transaction cannot be considered a mortgage. There is no principal debt to support or serve as a foundation for it. The proper

WESTERN DIST.
October, 1839.

PATTERSON
vs.
BONNER ET AL.

test is, in case of the death of the slaves, on whom does the loss fall? *Res perit domino.* 1 *Martin, N. S.*, 525.

It is not an antichresis, for it, like a mortgage, is but an accessory to a principal debt. It is not a pledge, for, by article 3119, of the Louisiana Code, it is essential to the contract of pledge that the creditor be put into the actual possession of the property pledged. It has been contended, that the *act of sale* under consideration was a *contrat Pignoratif.* This kind of contract was known in the old French jurisprudence, but has been disregarded in France since the revolution of 1789. It is to be hoped, that it will meet with no better reception in Louisiana. Its object was, to defeat loans on interest, under pretence of usury. See *Merlin's Repertoire, vol.* 9, *verbo Pignoratif:* also, *Questions du Droit,* 1 *vol., contrat Pignoratif.*

*Hyams,* also counsel for the defendant, argued against the demand set up in this action.

*Strawbridge, J.,* delivered the opinion of the court.

The history of this suit, which has been one of much interest in the community where the parties resided, and of great excitement between themselves, is this : On the 18th of March, 1825, the plaintiff, by authentic act, passed before the judge of the parish, bargained and sold to the defendant twenty-four slaves, the consideration for which was seven thousand nine hundred and twenty-two dollars, payable " as follows : one thousand nine hundred and twenty-two dollars, in hand, being a debt which Patterson owed her, and which she releases and discharges ; two thousand dollars on the 1st March, 1826 ; two thousand, 1st March, 1827 ; and the remaining two thousand, on the 1st March, 1828 ; for which said instalments the said Mrs. R. Bonner has given her three promissory notes, bearing even date with these presents, &c."

On the same paper is the following " Memorandum : It is agreed, that the said Thomas Patterson shall have the privilege of redeeming the negroes mentioned within, at any

time within three years after the last instalment mentioned within shall have been paid, by repaying the price, as expressed within, to the said Mrs. Rosanna Bonner, her heirs or assigns, with interest on the same at ten per cent. per annum from the time such payments shall have been made till such redemption shall take place."

On the 27th day of March, 1827, Mrs. Bonner instituted suit against Patterson, claiming from him the slaves, with their profits, they having remained in his possession, and requiring a sequestration, on the ground that she feared their removal from the state. Patterson contested this claim; the cause was tried, and judgment being rendered against him, in November, 1827, for the slaves and their profits, at the rate of one thousand and twenty dollars per annum, a writ of possession was issued, under which they were delivered to her on the 14th February, 1828.

On the 7th of February, 1834, a *fieri facias* issued on the judgment, for the sum of one thousand nine hundred and forty-five dollars, being the hire or profits of the slaves from 18th March, 1826, to 14th February, 1828, under which a tract of land was seized and advertised. Hereupon, Patterson commenced the present suit, in which he declares that this conveyance was made " to secure to her a certain sum of money;" " that it was expressly understood between them, at the time of making said instrument, that he was to have the services of said negroes, in order to enable him to pay the amount due her; and that, in pursuance of this understanding, they were left with him for nearly three years."

" That, after she thus obtained possession, it was agreed between them that interest should not run on the amount due her, and that the services of the slaves were more than equivalent to the interest;" " that he had made her a tender of the amount due her, which she refused to receive, or to deliver the slaves to him;" " that the services of the slaves were worth three thousand dollars per annum, which, in the six years and two months she held them, amounted to eighteen thousand and five hundred dollars, which is due him."

He further sets forth, " that, under the judgment already spoken of (which he calls a pretended one, which the said Rosanna Bonner subsequently told him was not just and right, and that she would never claim it), execution has issued, against which he prayed an injunction, as also judgment for his eighteen thousand and five hundred dollars, after deducting the amount due to her under the agreement." The injunction was issued.

The defendant appeared, and, for answer, showed :

1st. That the suit has been prematurely commenced ; that no legal tender or demand had been made.

2d. That the right of redemption never existed, but, if it had, the time for exercising it had passed.

3d. That the same matters and things had already been adjudged in the suit above referred to.

4th. A general denial, and prays dismissal of the injunction, with damages, &c.

The cause was tried by a jury, who found a verdict for plaintiff in the sum of three thousand six hundred and eighty dollars and fifty-one cents, and that he recover the slaves.

A new trial was granted, and a second jury found a verdict for the plaintiff for six thousand four hundred and nineteen dollars and thirty-six cents, and that he recover the slaves, on which verdict judgment was rendered, and this appeal has been taken.

The cause was heard at the last October term, but left undecided. Both parties now unite in desiring a final judgment, without remanding.

The conclusion we come to leaves out of view several questions which have been well argued at the bar ; that conclusion is :

*First*, that the plea of *res judicata* must be sustained, as to so much of the plaintiff's petition as claims the contract to be a loan, and not a defeasible sale.

*Secondly*, as to so much as claims that the profits or fruits by them produced belong to Patterson, the plaintiff. A reference to the pleadings in that suit, detailed above, will show that these points, urged in the present suit as means of

attack, were, in the former suit, used as a means of defence. <span>WESTERN DIST. October, 1859.</span>
The issues in both were: Is the contract a loan, or a sale
with condition? Are the profits or revenues arising from <span>PATTERSON vs. BONNER ET AL.</span>
the labor of the slaves the property of Patterson, or of Mrs.
Bonner? All the requisites to constitute a final judgment
on these points are before us: the same persons, acting in
the same character, the same thing, the same cause of
action.

Admitting, then, on behalf of the plaintiff, that what the
defendant denies to be put in issue by the pleadings really
was so, and that what formed the subject of the principal
discussion, viz. does the case present a *vente à réméré*, or the
*contrat Pignoratif?* in other terms, a defeasible sale, or a
feigned and usurious loan, is in issue in the present suit. Is
not this matter settled by the judgment, which, under such
pleadings, decreed to defendant the property in these slaves,
according to her title, and the sum of one thousand and fifty
dollars per annum, in lieu of the profits or use of the slaves.

If further proof be needed, the record furnishes it (for the
whole proceedings and evidence are in proof in this case.)
The defendant in that cause (plaintiff in this) propounded
interrogatories to Mrs. Bonner, the first of which was, "Was
it not agreed and understood between us, at the time of the
sale, that they (the slaves) were to remain in my possession,
and that I was to have the use and enjoyment of them?" to
which she answered, " it was not so understood by her."

If, now, we proceed to decide that the slaves belong to
him, and that he is entitled to their labor, will it not be in
direct contradiction to the former judgment, not only un- *Where a judg-*
appealed from, but carried into execution more than ten *ment of a court of competent ju-*
years since. There must be some end to litigation: what *risdiction stands unappealed from*
suitors have once had the opportunity of settling, must, *and is final, it is*
when decided, be final, or all rights of person and of property *conclusive on all the matters em-*
are afloat. It matters not how strong the case, how great *braced in it: whatever may be*
the errors of the former decree were, or what may be our *the errors or in-*
opinions concerning the rights of parties, if we could examine *justice done by it, it forms res*
them. When the final decree of a court of competent juris- *judicata, and cannot be re-*
diction, passing on the same matters, &c., is presented to us, *examined.*

if we can open it, the very foundations of society are broken up, and endless, fruitless litigation is all that is left.

The next question to examine, is, whether this action can be sustained by the plaintiff, he having made no tender of the price, &c., before instituting suit. It is insisted on the part of the defendant, that to entitle the plaintiff to recover the property, it was essential he should have paid or consigned the price, whilst the plaintiff insists, that not even a tender was necessary; but that, if necessary, it has been made. On this subject the proof is, that on the 24th of February, 1834, (the last payment having been made in 1832,) the plaintiff, accompanied by two witnesses, waited on the defendant, and told her " that he had come to pay her the money he owed for the redemption of the negroes." She replied " she could have nothing to do with it ; she had given up the business to her children, and any thing they would do she would be satisfied with." That, defendant then turned to her son, (who was present,) and had the management of her affairs, and said to him, " I suppose you will make no other arrangement but the one we were talking of," who replied, " *No*." That this was not a legal tender we do not doubt ; but it is very questionable, whether it did not amount to a waiver of such a tender. This, however, we do not find necessary to decide.

The Code Napoleon has, so far as regards this question, the same provisions as our own. Under these, the better opinion, (as it appears to us,) is :

In a sale with a defeasible condition (*vente à rémére*), it rests solely on the will of the vendor to dissolve the contract, and his expression of that will must have the same effect as the will of both parties in creating the contract.

1. That as the defeasible condition rested solely with the vendor, the expression of his will to dissolve the contract must have the same effect as the will of both parties to create the contract.

2. That this need not be accompanied by " *les offres reel,*" (a tender,) but that a mere verbal offer sufficed.

3. That such offer, made within the term allowed for redemption, preserved the right of redemption, and authorized the action after the expiration of the time. Troplong, *Contrat de Vente, No.* 718, *et seq.*, has treated this matter most ably, in a dissertation too long for insertion here :

Duranton, vol. 16, *Cours de Droit*, No. 403, approves of this construction, but limits the demand to one made in form to a "signification," "accompagnée d'offres même incompletes, même irregulières et faites dans le delai convenu etait une manifestation du vendeur d'exercer le réméré et avait en conséquence conservé son droit encore que ces offres n'eussent été services dans le mois ni dans le delai fixé d'une action en justice."

If we are to assume the opinions of these enlightened jurists, which are supported by decisions of the tribunals of France, we cannot avoid the conclusion that a sufficient notification of the plaintiff's intention to avail himself of the clause " *à réméré*," has been made, and that his action, even after the term of redemption, has been preserved.

But a very different result from that contended for by the plaintiff follows; though he thus preserves the right of redemption, the fruits or profits do not become his until the payment or consignment of the price. *Louisiana Code, article* 2564, corresponding to page 364, article 106 of the old Civil Code of 1808.

The ten per cent. interest on the loan cannot be allowed. The judgment pleaded in bar does not give it. In deciding the contract to be one of sale, and not of loan, it appears to have been impliedly settled, that no interest could be allowed. We have given the defendant the benefit of that judgment. This question of interest, had it been open, would have been a very awkward circumstance in adjudging this contract not to be a loan. We know of no law authorizing such a stipulation for interest.

The amount of the first judgment, it is necessary to say, forming neither part of the purchase money, expenses for repairs, costs of sale, or of improvements, stands on a different footing from the price, and cannot be connected with it and the restoration of the slaves.

We therefore order and decree, that the plaintiff recover from the defendants the slaves *named* in the petition, or such of them as survive, on paying to defendants the sum of

WESTERN DIST.
*October*, 1839.

PATTERSON
*vs.*
BONNER ET AL.

So, where the vendor in a sale, with a defeasible condition, in the presence of two witnesses, offered to repay the price and redeem the property within the time limited, which was refused, and he made no consignment of the money: *Held*, that this was a sufficient notification to the vendee of the intention to redeem and preserve to the vendor his right of action to dissolve the contract after the term had elapsed. Although the right of redemption is preserved to the vendor of his intention and readiness to redeem, within the time limited, yet, without a consignment or tender of the money, he is not entitled to the fruits or profits. In a *vente à réméré*, where the vendee has possession and enjoys the fruits or profits of the property, a stipulation to pay ten per cent. interest on redemption and repayment of the price, will be deemed illegal.

PATTERSON
vs.
BONNER ET AL.

($7922,) seven thousand nine hundred and twenty-two dollars.

That the injunction be dissolved, and that the plaintiff in injunction, together with his surety, John B. Scott, be condemned to pay the heirs of Rosanna Bonner ten per cent. interest, and ten per cent. damages on the sum of ($1945,) one thousand nine hundred and forty-five dollars, and that the said defendants, heirs of Rosanna Bonner, pay costs in both courts.

The following amendment was made to this judgment :

" On motion of *J. K. Elgee*, Esq., of counsel for the plaintiff, and by consent of *H. M. Hyams*, Esq., counsel for the defendant : It is ordered, that the judgment be amended by inserting the names of E. L. Briggs and Wm. H. Cureton as sureties in the injunction bond, in lieu of J. B. Scott ; and that this order be entered as of the 18th (October) instant, the day on which said judgment was rendered, the motion having been made at the time of rendering the same."

Order on an application for a rehearing :

" On motion of *J. K. Elgee*, Esq., counsel for the plaintiff, a rehearing in this case is granted, so far as relates to the plaintiff's claim to the children born during the time the slaves were in possession of the defendant ; but this order shall not prevent the execution of the judgment in these matters ; and that in the delivery of said slaves, children under ten years of age shall not be separated from their mothers. But the plaintiff shall give security, at the discretion of the judge *a quo*, to produce such children, to answer the final decree ; and that the rehearing as to the other parts of the decree be refused."