# NEW ORLEANS *v.* CITIZENS' BANK.

APPEAL FROM THE CIRCUIT COURT FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 108. Argued January 15, 18, 1897. — Decided May 24, 1897.

By the act of January 30, 1836, the legislature of Louisiana exempted the capital of the Citizens' Bank in New Orleans from taxation.

The two judgments of the District Court of New Orleans between the bank and the city, which are set forth in the opinion of this court, hold that

this exemption continued after the expiration of the original charter and
during its extension, and as they were made upon identically the same
facts and circumstances as those here presented, they are *res judicata,*
conclusive upon the parties, and estop the city from attempting to
enforce such taxes.

The exemption of the capital of a corporation from taxation does not
necessarily exempt its shareholders from taxation on their shares of
stock.

The claim of the bank to non-liability to taxation on property acquired by
it under foreclosure of 'a mortgage is rejected, without prejudice to
the right of the State and the municipal authorities to claim a license
tax, if imposed by law on the bank, and without prejudice to the right
of the bank to assert any legal defences to the payment of such tax.

THE case is stated in the opinion.

*Mr. M. J. Cunningham,* Attorney General of the State of
Louisiana, for appellants. *Mr. F. C. Zacharie* and *Mr. Alexander Porter Morse* were on his brief.

*Mr. William A. Maury* for appellee. *Mr. Henry Denis* and
*Mr. Branch K. Miller* were on his brief

*Mr. Samuel L. Gilmore* for appellants.

MR. JUSTICE WHITE delivered the opinion of the court.

Under the taxing laws of the State of Louisiana, real estate
held or owned by banking corporations is assessed like the
same class of property owned by other citizens, but special
provision is made for the assessment in other respects of the
capital of the banks as follows:

"That no assessment shall hereafter be made under that
name, on the capital stock of any national bank, state bank,
banking company, banking firms or banking association,
whose capital stock is represented by shares, but the shares
shall be assessed at their actual value as shown by the books
of the bank, or banks, to the shareholders, who appear as
such upon the books, regardless of any transfer not regis-
tered or entered upon the books, and it shall be the duty
of the president or other officer to furnish to the assessor a

complete list of those who are borne upon the books as shareholders; and all taxes so assessed shall be paid by the bank, company, firm, association or corporation, which shall be entitled to collect the amounts from the shareholders or their transferees; all real estate owned by the bank, company, firm, association or corporation shall be assessed directly to the bank, company, firm, association or corporation, and the *pro rata* of such direct property taxed, proportioned to each share of capital stock, shall be deducted from the amount of taxes assessed to that share under this section.

"Such assessment shall be made where the bank, etc., is located, and not elsewhere, whether the shareholders reside there or not. The said book value shall be ascertained upon a statement duly sworn to by the president, cashier or secretary, and chairman of finance committee, or in the absence of such latter officer then by one of the directors, showing the assets in detail, and the valuation placed upon each, and said valuation shall be at a fair market value. The sworn statement of the bank's condition made next preceding the date of listing shall be the basis of assessment. Any president or other officer who shall refuse or fail to deliver the said list of shareholders, and said statement of book value and of bank's condition, within the first twenty days of January of each year to the assessor, shall be guilty of a misdemeanor, and on conviction shall be punished by fine or imprisonment, or both, at the discretion of the court. The district attorney will at once act upon any complaint of such neglect or refusal made to him by the assessor, or by the board of assessors in the parish of Orleans." (La. Acts of 1890, p. 133; La. Acts of 1888, p. 123.)

The revenue laws of the State in addition provide that whenever the assessors find that property has been omitted from the assessment rolls, such property shall be assessed for the current year and for three back years.

The Citizens' Bank of Louisiana, a corporation created under the laws of that State, filed in 1892 its bill in the Circuit Court of the United States against the city of New Orleans, the board of state assessors for the parish of Orleans

and the state tax collectors for the various collection districts
in the parish of Orleans. The bill in substance alleged that
although the bank was contractually exempt from state and
municipal taxation under its charter and the acts supplemen-
tary thereto, the board of assessors were about to assess the
bank under the assessing law above referred to, not only for
the tax of the year 1892, but also for the three preceding
years, viz., 1889, 1890 and 1891; that the assessing board had
called upon the bank for a list of its shareholders in order to
make the assessment, and that unless restrained the assess-
ment would be made and the tax collected thereon. Besides
alleging the contractual exemption resulting from the charter,
the bill averred that the fact of such exemption was conclu-
sively determined by the presumption of the thing adjudged
resulting from judgments previously rendered between the
parties. The bill also averred that an attempt to enforce
the assessment and tax would impair the obligations of a
contract protected by the Constitution of the United States,
the rights asserted by the bank under the Federal Constitu-
tion being specially set up and claimed in the complaint. The
prayer was for a restraining order and for an injunction
enjoining the board of assessors from taking the steps neces-
sary to make the assessment, from completing the assess-
ment, and the collectors from collecting any tax thereunder.
The restraining order which was issued allowed the board of
assessors to obtain the necessary information from the bank
to make the assessment, and also the formal making of the
assessment by the board subject to the final decision as to its
legal right to assess the bank, but restrained any attempt to
collect any tax or to enforce any assessment after it was made
under the conditions above stated until the final decision in
the cause. Under the terms of the restraining order the board
of assessors assessed the bank in accordance with the law
above referred to for the year 1892 and for the years 1889,
1890 and 1891.

The complainant was refused leave to file an amended bill
attacking these assessments for invalidity in form. There-
upon the complainant filed a supplemental bill against the

sheriffs of thirteen parishes in the State of Louisiana, outside of the parish of Orleans. This bill alleged that the sheriffs named as defendants were *ex officio* tax collectors for the respective parishes in which they held the office of sheriff, and that as such they proposed to collect, and were about to collect, certain taxes for various years on real property belonging to the bank situated in said parishes, and which had been illegally assessed for taxation therein. That the assessment of the taxes complained of had impaired, and the collection thereof would further impair, the obligations of the contract resulting from the charter of the bank protected from impairment under the Constitution of the United States. The prayer was that the named defendants be made parties to the bill and that the collection of the taxes be perpetually enjoined. Demurrers to the jurisdiction to entertain either the original or supplemental bill having been overruled, answers were filed specially denying the right of the bank to the exemptions claimed. A hearing was had, and from a decree entered against them, 54 Fed. Rep. 73, the defendants appealed to this court..

The court found in favor of the complainant and adjudged that "the exemption of said Citizens' Bank, its capital, property and shares of stock of its shareholders, is hereby recognized and decreed to exist as conferred by its charter and the laws amendatory thereof and relating to the Citizens' Bank, and especially by the act No. 40 of 1874, extending the charter of the Citizens' Bank, which extension and the said exemption for the further period thereof is hereby recognized and decreed to exist, and the injunction herein issued is hereby made peremptory." The injunction which the final decree allowed forbade the collection of taxes for designated years by the State of Louisiana and the city of New Orleans, "upon the capital, property or shares of stock of the shareholders of said bank, whether assessed against the bank or its shareholders," and in addition the writ also enjoined the demanding or collecting from the bank of any state or city license tax.

The exemptions to which the decree below held the bank to be entitled related therefore to distinct objects of taxation,

one not necessarily connected with or dependent upon the other, and may be summarized as follows: First. That the bank was not subject to taxation on its capital, shares of stock or real estate and furniture actually used for the carrying on of its banking business, and that the bank could not be lawfully obliged to pay the sum of any tax assessed on its shareholders. Second. That the stockholders of the bank were not liable for assessment on their shares of stock. Third. That the bank was also not subject to taxation on any real estate held by it which had been mortgaged to secure stock subscriptions and had become the property of the bank under foreclosure proceedings, because property so acquired became by virtue of the purchase a part of its capital stock. Fourth. That the non-liability of the bank to taxation embraced also immunity from the payment of a license tax to either the State of Louisiana or the city of New Orleans.

The contentions which arise between the parties on this appeal from the decree below rendered are as follows: First, the bank asserts that by the effect of its charter it was contractually exempt from taxation on all the foregoing objects of taxation; that this exemption existed not only during the terms of the original charter, but during the term for which the charter was extended. The contract being asserted to result, not only from the express terms of exemption in the original act, but from the fact that the very nature of the contract between the bank and the State carried this exemption into the period of the extended charter, as the bank and its capital were dedicated to the payment of the bonds, outstanding obligations of the State, and the bank was, therefore, in a measure, a *quasi* state institution. Second, that the contractual right to the exemption as above stated is conclusively determined by the presumption of the thing adjudged, resulting from certain judgments relied upon.

On the other hand, the contention of the defendants is that the exemption did not originally obtain, or if it did, was not carried into the extended period of the charter, because it could not be so carried under the constitutions of the State

of Louisiana of 1868 and 1879, by which the bank was bound, and that the judgments relied on and which were offered in evidence do not constitute "the thing adjudged."

A brief statement of the history and purposes of the organization of the Citizens' Bank and of the past action of the taxing authorities in the State of Louisiana as to that bank is necessary in order to make clear the conclusions which we have formed on the foregoing contentions.

The Citizens' Bank was organized by a legislative charter granted in 1833, and amended in 1836. As the effect of the charter on the taxing power will be hereafter fully stated in the language of the Supreme Court of the State of Louisiana, it suffices now to say that in its ultimate form the scheme proposed by the charter was as follows: The subscribers to the stock of the bank did not pay for their subscriptions in cash, but evidenced the amount thereof by interest-bearing notes, payable in instalments maturing many years ahead, the last instalment becoming due only in 1886. The payment of these notes, thus furnished for the amount of the subscription, was secured by a mortgage on real estate and slaves. The working capital of the bank was procured by a loan from the State to the bank of its bonds to the amount of seven millions of dollars, and these bonds of the State were endorsed by the bank, and were by it sold in open market. To secure the payment of these state bonds the bank pledged all the notes furnished by its stockholders for the amount of their stock subscriptions, as well as the mortgages by which the payment of these notes was secured. As an additional security for the payment of the bonds of the State, the right of the stockholders to receive a dividend was limited, the charter providing that a given portion of the earnings should be added to the capital. The State, moreover, was to have an interest in the profits of the bank to a stated amount, and its affairs were to be conducted by a board partly elected by the stockholders and partly appointed by the State.

By the original act, the term of the charter would have expired in 1884, and section 4 of the act of 1836 provided that "the capital of said bank shall be exempt from any tax laid

by the State, or by any parish or body politic under the authority of the State, during the continuance of its charter." The constitution of the State of Louisiana, adopted in 1868 (article 118), after directing that all property shall be taxed in proportion to its value, provided that "the general assembly shall have power to exempt from taxation property actually used for church, school or charitable purposes." In interpreting this provision of the constitution, the Supreme Court of the State of Louisiana has held in many cases that it deprived the general assembly of all power to exempt property not actually used for church, school or charitable purposes. In 1874, ten years prior to the period when the charter of the Citizens' Bank would have expired, the general assembly of the State of Louisiana passed an act extending the charter to the year 1911. The preamble of this act recited the loss and damage which must ensue from an attempt to promptly realize on the obligations resulting from the stock mortgages and the interest of the State in the collection of the sums due, as they were the means relied upon to pay the bonds by it issued. Besides extending the charter to the period stated, it authorized the board of directors of the bank to negotiate for an extension of the state bonds. (La. Acts of 1874, No. 40, p. 77.)

In the year 1880 (La. Acts of 1880, p. 104), the general assembly of Louisiana passed an act conferring on the Citizens' Bank the power to compromise and settle the obligations of its mortgage stockholders, provided the assent of the bondholders was obtained, and the compromise was made also with the approval of the directors of the bank appointed on behalf of the State. The act contained a provision for its acceptance by the bank, and stipulated that the bank should be made subject to articles 234 and 237 of the constitution of 1879.

When this act was adopted the constitution of 1879 had superseded that of 1868. The new constitution contained a provision as to taxation differing in some respects from that of 1868, but which as to the power of the general assembly to exempt from taxation may be said to be equally as stringent

as were the provisions found in the constitution of 1868. The Citizens' Bank accepted the terms of the act.

From the date of the original charter in 1833 to the year 1877, that is, for a period of forty-four years, no attempt was made by the State, or any of its political subdivisions, to tax the bank on the subjects of taxation referred to above under the first heading. The State, therefore, in all its taxing departments of every nature for this long period, recognized the bank as in part not subject to taxation. In 1878, for the taxes of 1877, assessable in 1878, the board of state assessors, whose assessment rolls were also the basis for the taxation of the city of New Orleans, assessed the bank on taxable assets over and above the capital stock, not including real estate, at a value of $159,828.62, and on the cash value of the capital stock assessed to the shareholders $636,450, and the bank under the law of Louisiana was notified not only to pay the tax thus placed upon its assets, but also the sum of the tax resulting from the assessment made on the shares of stock against the shareholders. In June, 1878, the bank filed its petition in the third District Court for the parish of Orleans, seeking to enjoin the collection of the tax so assessed. The petition for an injunction set out the charter and the amendments thereto, the fact that the bank was not liable to taxation, and that if enforced it would impair the obligations of the contract entered into between the State, the bank, the stockholders and bondholders, and upon the petition of the bank a preliminary injunction was allowed. To this suit the state tax collector and the state auditor and the board of assessors were made parties defendant. The board of assessors answered, admitting the assessment and averring its validity. The answer besides averred that the clause of the charter exempting the bank from taxation was in violation of the constitution of the State of Louisiana of 1812, in force at the time the charter was granted, and that it also violated subsequent constitutions, and particularly the clause in the constitution of 1868, to which reference has already been made. The answer, moreover, averred that the tax on the shares of stock in the hands of the shareholders was not a

tax on the bank, and that the provisions of the state law by
which the bank was obliged to pay the sum of the tax assessed
on the shares of stock of its shareholders was lawful. The
state tax collector and the state auditor, through the assistant
attorney general of the State, also answered, setting up de-
fences similar in character to those made by the board of
assessors. By way of reconvention under the Louisiana law
(Code of Practice, articles 374, 375), these officials, averring
the liability of the bank for the taxes assessed as above stated,
prayed judgment against the bank for the entire sum of the
taxes, with costs, penalties and attorney's fees.

Upon these issues there was judgment in favor of the bank,
declaring the assessment null and void, and perpetuating the
injunction. From the judgment so rendered an appeal was
prosecuted to the Supreme Court of the State of Louisiana.
The case was heard in that court. *Citizens' Bank* v. *Bouny,
Tax Collector*, 32 La. Ann. 239. Two opinions were announced
by the court, one on the first hearing and the other on a re-
hearing. In the first, the court unanimously held that the
exemption of the bank under its charter was valid, and, there-
fore, that the taxes assessed against it *eo nomine* were void,
because impairing the obligations of its contract, but that the
tax assessed against the shareholders was irregular in form
and not in accordance with the provisions of the Louisiana
statute, and was therefore invalid. In the opinion on appli-
cation for rehearing, the previous opinion as to the non-liability
of the bank *eo nomine* to taxation of its capital or assets was
reiterated, but the previous conclusion as to the irregularity
of the assessment on the shareholders was withdrawn, the court
unanimously holding that under the peculiar provisions of the
charter of the Citizens' Bank any attempt by the State to take
from the funds of the bank any of its money for the purpose
of paying the sum of the tax assessed against the shareholders
impaired the obligation of the contract entered into between
the State and the bondholders and stockholders, and was
therefore void. The opinion of the court on the rehearing so
clearly and concisely states the attitude of the bank to the
State, and the obligations resulting from those relations, that
we reproduce in full the text of the opinion :

" SPENCER, J. It will be seen by our former opinion in this case, that there is demanded of the bank taxes —

" First, on $159,828.62 assessed as ' taxable assets over and above the capital stock,' and

" Second, on $636,450 assessed to the shareholders of said bank, as ' value of capital stock,' etc.

" The taxes so assessed to the stockholders are demanded of the bank, under the revenue act of 1878, which requires the banks to pay such assessments.

" The bank resists both demands on the ground that by its charter it is exempt therefrom.

" 1. We see no reason to doubt the conclusion that by section 4 of the act of January 30, 1836, the capital of the Citizens' Bank is exempt from taxation. ' The capital of said bank shall be exempt, etc., . . . during the continuance of its charter,' is the language used. That language is broad enough to cover everything which, during its existence, should enter into and make part of the capital of said bank.

" By the twenty-ninth section of the original charter ' all the profits made by said corporation shall be added to and made a part of its capital,' except a certain fraction of any excess of profits over what was necessary to pay the bonds issued by the bank. It is not pretended that any such excess of profits exists or ever has. As a matter of fact, the bank has never declared a dividend to its shareholders. This sum of $159,828.62 is accumulated profits, which, by the charter, enter into and become part of the bank's capital, and is, therefore, exempt.

" 2. The shareholders of the bank have been assessed for the value of their shares of stock and the tax thereon is demanded of the bank. Under the view we have taken of this case, it will be unnecessary to discuss the question so much argued by counsel as to the right of the State to tax the shares of the shareholders. The bank has no mission to raise such a question, except so far as it may be necessary to protect itself. Even if the shareholders be liable to taxation on their shares (upon which we express no opinion), under the peculiar and exceptional nature of the charter of the Citizens' Bank we

think it cannot be forced to pay the taxes assessed to its shareholders.

"To enable this bank to obtain its capital, the State loaned it bonds to the amount of several millions; which bonds were put upon the market and sold by the bank; the bank binding itself to take them up at their maturities, and to pay the interest thereon as it accrued. In order to secure the State against loss, and guarantee the payment of the bonds, the mortgages and pledges given by the stockholders to secure their subscriptions and loans were transferred to the State and the bondholders. All profits were to be capitalized, except as above mentioned. No dividends were to be distributed, except out of a small fraction of any surplus of profits, after meeting and paying the maturing bonds and interest.

"It is, we think, manifest that the bondholders are to be paid out of the profits of this bank by preference, and before any dividend can be declared or distributed to shareholders. It is not shown or pretended that the bank has in its possession any funds which it could legally distribute to its shareholders, or which it could pay to them without a manifest violation of its charter: If voluntary payments to or for account of its shareholders would violate its charter, and be a breach of its contract with the State and its bondholders, forced payments would be equally so. The authorities cited by the defendants are inapplicable to the present case. Where the capital, assets and profits of a bank are at the disposal of its shareholders, the State may perhaps compel the bank to pay their taxes on stock. But such legislation with reference to the Citizens' Bank would be violative of the vested rights of others, and, as we think, unconstitutional."

Under this judgment of the Supreme Court of the State, the taxes against the bank were cancelled.

In the meanwhile, pending the appeal to the Supreme Court of the State in the case just mentioned, a like assessment on the Citizens' Bank and its shareholders was made for the taxes of 1879, and in 1882 the city of New Orleans brought suit in division A of the civil district court, a court of general and unlimited original jurisdiction created under the constitu-

tion of 1879, to enforce the payment of this assessment. To this suit the bank answered, setting up by way of defence its non-liability to taxation under its charter, and there was judgment in favor of the bank rejecting the claim of the city, and in consequence of this fact the assessment was cancelled.

From 1879 to 1884, presumably in consequence of the foregoing judicial proceedings, no assessment was made against the bank. In 1884, however, the board of assessors again assessed the bank on its furniture and banking house, and upon its shares of stock. Thereupon, in October, 1884, the bank filed its petition in division B of the civil district court, against the board of assessors, the city of New Orleans and the state tax collector of the city of New Orleans, praying for judgment decreeing "that said assessments are illegal, null and void, that they be erased and cancelled and be prohibited from being collected, and that any record of the mortgage therefrom resulting, be decreed to be erased." The petition set out the charter of the bank, the decision of the Supreme Court of the State in the case of *Citizens' Bank* v. *Bouny*, and averred the non-liability of the bank for taxation, and averred no other legal defence. After issue joined, there was judgment in favor of the bank "against the defendants, the board of assessors for this parish, the city of New Orleans, and the state tax collector above Canal street, ordering said board of assessors in and for the parish of Orleans, the city of New Orleans, and the state tax collector of the city of New Orleans above Canal street to be directed and commanded to erase as illegal, null and void the assessments described in plaintiff's petition and recited below, and that they be prohibited from collecting any taxes based on said assessment." From this judgment no appeal was prosecuted, and on its finality an entry cancelling the assessment was made. From the date of this assessment in 1884 until the year 1886 no other assessment on the subjects of taxation referred to was made against the bank. In 1886, however, — the term of the original charter of the bank having expired in 1884, and the extended term provided for by the act of 1874 having therefore come into existence, — the board of

assessors again assessed the bank for the state and city taxes for the year 1886, on its banking house and on its shares in the name of the shareholders. In October, 1886, the bank filed its petition in division D of the civil district court for the parish of Orleans, praying the annulment of this assessment, and making the board of assessors, the state auditor, the city of New Orleans and the state tax collector parties defendant. The petition set out the charter of the bank, its non-liability to taxation thereunder, and the judgment of the Supreme Court of the State in the case of *Citizens' Bank* v. *Bouny* was pleaded as *res judicata*. Although there was a general averment in the petition that the tax was excessive besides being illegal, there was no allegation contained therein adequate to justify or support the prayer that the assessment be annulled, except the assertion that the property of the bank was exempt from taxation.

After answer by the parties defendant, there was judgment on March 10, 1887, decreeing "the assessment for the year 1886, standing against the banking house or real estate in the square bounded by Gravier, Camp, Poydras and St. Charles streets, assessed at seventy-five thousand dollars, on 10,500 shares of the capital stock, at $42.75 per share, aggregating an assessment of $448,875, null and void and of no effect, and that the same be cancelled and erased from the books of their respective offices, and that any inscription of the same in the mortgage office be cancelled and erased, and costs of suit." This judgment was not appealed from, and on its becoming final an entry on the assessment roll was made cancelling the assessment.

On the 21st of March, 1887, a few days after the decision in the cause just stated, the Citizens' Bank filed its petition in division A of the civil district court of the parish of Orleans against the board of assessors. In this petition, after averring that under its charter the bank was not liable to assessment and that it could not be taxed without impairing the obligations of the contract created by the charter and in violation of the constitution of the State and of the United States, the petitioner proceeded to aver the previous judicial recognition

of the effect of the charter, and alleged that, notwithstanding these facts, the board of assessors were about to assess the bank for the taxes of 1887 upon its shares of stock, upon its banking building and upon the furniture therein used by petitioner for conducting its said banking business and upon other property possessed by petitioner, that said proposed assessments were without warrant of law, and the bank was entitled to enjoin the making of the same.   A preliminary injunction having been issued as prayed for, the case was put at issue, and resulted in a judgment, on the third of May, 1887, perpetuating the preliminary injunction, and enjoining the board from " assessing the Citizens' Bank for taxes, state or city, for the year 1887, upon its capital stock, on the shares thereof, or its property, and that said assessment if made be cancelled from the books of the assessor for the year 1887, and that the recorder of mortgages for the parish of Orleans be and is hereby enjoined from recording said assessments upon the books of his office."   This judgment was also not appealed from, and upon its becoming final was executed by proper entry on the books of the recorder of mortgages.   From the date of this judgment in 1887 to the year 1892, to quote the language of the deputy recorder of mortgages, " there are no assessments on the roll against the bank on capital or on the bank building or on the shares.   In the place of the assessments there is the word 'exempt' and the name of the bank, but no assessments, and all the assessments of which I have spoken [referring to those above alluded to] have been marked cancelled by order of court."

In 1892 the right to assess was again asserted by the board of assessors under the circumstances which we have previously stated, and the controversy now before us therefore arose.

Since this case was decided below, the Supreme Court of the State of Louisiana has had before it a suit brought by the bank against the board of assessors, asserting its non-liability to assessment and taxation under its charter, for taxes against real estate acquired by it under foreclosure of its stock mortgages.   Certain judgments rendered in favor of the bank (presumably those relied upon in this record) were set up as

constituting *res judicata*. The court of last resort of the State said in its opinion on the first hearing that it was unnecessary to pass upon the plea of the thing adjudged, since the judgments relied upon did not embrace the question of whether property bought by the bank under foreclosure of its stock mortgages was included within its exemption. The court held, considering the terms of the charter, that such property was not included in the exemption. In that case both the act of 1880, above referred to, and the act of 1874 were set up as conclusively establishing that the bank was not exempt from taxation at all. In an opinion on a rehearing the court somewhat modified the grounds for its conclusions, and in the course of the opinion said:

"We refrained from stating the effects as to the taxation of the bank's capital in consequence of act 79 of 1880. We now do the same, because we think it unnecessary to do so. We propose to let that question as to the exemption of the bank's capital rest on the decisions heretofore rendered."

In concluding the opinion the court said:

"We think the Citizens' Bank has heretofore obtained all that it is entitled to, the exemption from taxation of its capital proper and the real estate necessary for carrying on its legitimate business or purposes." *State ex rel. Citizens' Bank* v. *Board of Assessors*, 48 La. Ann. 35.

From the foregoing statement it is evident that the contention of the plaintiffs in error, if maintained, will overthrow the construction of a statute of the State of Louisiana, sanctioned by nearly sixty years of practical execution, and supported by decrees of the courts of that State which are final and which were regularly rendered during a long period of time whenever an attempt was made to assess the property of the bank. It is true that during the greater portion of the time when the charter was construed by the officers of the State of Louisiana, and interpreted by the courts as rendering taxation of the bank illegal, the original charter was in force, and the question whether the bank was subject to taxation during the term of its extended charter could not therefore technically arise. But the old charter period expired in 1884,

and it is clear that from 1884 until 1892, not only was the bank generally treated as not liable to taxation under its charter, but whenever an attempt was made to tax it the courts of the State held the assessment unlawful.

Indeed, the language of the Supreme Court in the case to which we have referred, decided since the decree under review was rendered, sustains the construction which the charter of the bank had previously received under so many years of practice approved by the repeated adjudications of the Louisiana courts.  It is argued that in giving expression to these views the Supreme Court of the State of Louisiana indulged in mere *dicta*, but although this be conceded, the *dicta* necessarily afford some light as to the proper meaning of the charter.

Passing the consideration of the question of the correctness of the decisions of the courts of Louisiana, and the influence which they should have upon this court in interpreting a purely Louisiana contract, the question arises, Are not the judgments rendered between the bank, the board of assessors, the city of New Orleans and the state taxing officers, absolutely conclusive, under the principle of the thing adjudged, of the issue here presented?   Of course, if the judgments are the thing adjudged, and conclusively determine as between the parties that the exemption of the bank under its charter exists, to the extent determined by the judgments, the duty in that regard of discussing the charter itself will be eliminated, since the effect of the thing adjudged will be to settle that question.

In considering this question, we at once eliminate all the judgments rendered prior to the period when the amended charter took effect, and therefore confine our examination to the two judgments rendered by the civil district court, the one as to the taxes of 1886 and the other as to those of 1887. The reasons relied on to establish that these judgments do not constitute the thing adjudged are embodied in three propositions.   First, because although it is true the officials who are made defendants are the successors in office of the officers who were impleaded in the judgments relied upon, as they are not the same natural persons, therefore there is a want of

identity of parties; second, because the records do not show with sufficient certainty that these judgments were based on the identical claim of exemption from taxation which is now asserted, and therefore that the judgments do not establish that the matter here in issue was necessarily therein concluded; third, because, whatever as a general principle may be the efficacy of the thing adjudged, that rule has no application to taxes of different years, since a judgment decreeing a tax of one year illegal can never be *res judicata* as to a tax of a future year, although the right to tax for a future year is resisted upon the same facts and between the same parties, and upon the identical legal grounds held to be conclusive in a judgment previously rendered between them.

In passing we notice briefly an argument advanced in the discussion at bar, that as the civil district court of the parish of Orleans is a court composed of several judges, each of which judges presides over a separate division, therefore the judgments of one of the divisions can never become the subject-matter of *res judicata*. But this argument denies that the civil district court of the parish of Orleans is a court at all. The civil district court is a court of general and unlimited original jurisdiction, possessing full common law, equity and probate powers, besides having an appellate jurisdiction over the city courts. Constitution, 1879, art. 130. It is true that the court is divided into divisions, but each division has plenary jurisdiction over the causes allotted to it for decision, and the mere creation of separate divisions does not deprive the courts of their judicial character, or prevent their judgments when final from creating the presumption of the thing adjudged between the parties thereto. Constitution of the State of Louisiana, 1879, art. 130.

The first contention based upon the mere change in the person holding the particular office is without merit. It is not denied that the tax collectors and board of assessors who stood in judgment in the suit when the decisions were rendered were duly qualified and empowered to that end. And it is also not gainsaid that the successors in office of those officers who are defendants here are also duly em-

powered.   The mere fact that there has been a change in the person holding the office does not destroy the effect of the thing adjudged.   *Scotland County* v. *Hill*, 112 U. S. 183; *Harshman* v. *Knox County*, 122 U. S. 306; *State* v. *Rainey*, 74 Missouri, 229; *Harmon* v. *Auditor*, 123 Illinois, 122.

The second question then is this: *Were the final judgments which held that there was no power to levy the taxes on the Citizens' Bank for the years* 1886 *and* 1887 *based upon the identical claim of exemption now asserted by the bank in order to defeat the taxes here in question?*

The petition filed by the bank in the suit, by it commenced, to have the taxes of 1886 on stock cancelled and annulled, is set out in full in the margin.[1]   It will be seen that it specifically averred the charter of the bank, and that under its provisions the bank could not be taxed, and that to so do would impair the contract obligations created by the charter, and would be violative of the constitution of the State of Louisiana and of the United States.   It, moreover, referred to the previous adjudication by the Supreme Court, and contained an allegation that the assessments, besides "being illegal and without warrant of law, were excessive."   But the relief prayed was not the correction or reduction of an excessive assessment, but solely that the assessment be decreed "void and null," and be "cancelled and annulled."   The answers of the defendants asserted the legality of the assessment and denied the right of the bank to question the amount, because it had not availed itself of the antecedent statutory remedies necessary to entitle it to assert such right.   The judgment ren-

---

[1] PETITION.   Filed October 29, 1886.

The Citizens' Bank of Louisiana ⎱ No. 19144.   Civil District Court.   Divi-
            *vs.*                   ⎰            sion "D."
The Board of Assessors, et als.

To the honorable the civil district court for the parish of Orleans :

The petition of the Citizens' Bank of Louisiana, a corporation established by law, domiciled in New Orleans, respectfully shows —

That the board of assessors for the parish of Orleans have assessed petitioner upon the assessment rolls for 1886 for taxes to the city of New Orleans and State of Louisiana, on which the assessments are as follows, to wit:

dered upon these issues decreed, not·that the tax was exces-
sive, not that it should be reduced, *but that it was null and
void, and must be cancelled.*   The judgment is inserted in the

On the banking house of petitioner, erected on petitioner's real estate in
the square bounded by Gravier, Camp, Poydras and St. Charles streets, and
on said real estate, assessed at seventy-five thousand dollars, and on 10,500
shares of the capital stock of the bank, assessed at $42.75 per share, aggregat-
ing an assessment of $448,875, on which the taxes assessed will amount to
upwards of fifteen thousand dollars, as appears by said assessment, specially
referred to for fuller explanation and greater certainty.

That under the charter of the bank granted by the .State the bank is ex-
empted from all taxation, state, parish and municipal, in any form ; that
on the faith of said charter and of said exemptions the capital of the bank
was furnished, the bank organized, and its banking has been for years and
is now conducted, all of which more fully appears by the legislative acts
on it, the act to incorporate the Citizens' Bank, approved 1st April, 1833 ;
the act amendatory of the first act, approved 30th January, 1836 ; the act
No. 246 of 1853, the act 141, p. 852, and other acts on the subject, under
which acts of 1833 and 1836 the original capital of the bank of ten millions,
and under which acts of 1852 and 1853 the additional capital of the bank of
one million dollars were furnished, all of which more fully appears by the
said acts, specially referred to for fuller explanation and greater certainty,
said exemptions being contained in the thirtieth section of the act of 1833.

That the aforesaid assessment on shares of $448,875 purports to repre-
sent the capital of the bank and is specially in excess of the value of the
shares and of the capital, besides being illegal and without warrant of law ;
that the aforesaid real estate assessed as aforesaid is in excess of the value
of said real estate, besides being illegal ; that said real estate was purchased
and the building thereon erected with the funds of and belonging to the
capital of the bank and said real estate and building represent and form
part of said capital ; that said assessments are in violation of the exemption
granted to the bank and are illegal, null and void, and any liens, if any
there be, binding to direct said assessments is void for repugnancy to
article 1, section 10 of the Constitution of the United States, and article
155 of the constitution of the State.

That in the suit of The State Tax Collector *v.* The Citizens' Bank, decided
by the civil district court on the ——, 1880, and affirmed by the Supreme
Court of the State, 32 Ann. p. 239, said exemption was maintained and
adjudged valid, and said adjudication is *res judicata* against said present
assessment and all demands thereon.

That within the delays and according to the forms prescribed by law
petitioner protested against said assessment and applied to the board of
assessors to have the assessment cancelled, but said protest and application
were disregarded ; that within the delays and according to the forms pre-
scribed by law petitioner made the same protest and application to the

Opinion of the Court.

margin.[1]  Now, to say that this judgment may have pro-
ceeded upon other issues or may have been rendered because
of some presumed irregularity, without considering the as-
serted exemption, is to substitute conjecture for the facts un-
equivocally and conclusively established by the record itself.
Under the pleadings only two issues were presented, that the
tax was void because under the charter the bank could not be
taxed, and that it was excessive; but the judgment did not
reduce the amount of the tax — it decreed it to be void.  In
the pleadings there is nothing which justified the decree or to
which it was responsive except the exemption of the bank.
And this conclusion results by an overwhelming implication
when the state of the statute law of Louisiana is considered.
By that law, as is shown by the assessment here assailed,
wherever a tax is excessive in amount it is not to be avoided

---

common council and to its standing committee on assessments of the city
council, but said protest and application were also disregarded.

Wherefore petitioner prays that the board of assessors for the parish of
Orleans and the city of New Orleans be duly cited to answer this demand;
that the state tax collector for the first district be also cited; that after
due proceedings according to law there be judgment in petitioner's favor,
decreeing said assessment of said shares and on said real estate to be void
and null and decreeing it to be cancelled and annulled, and that any inscrip-
tion of the same in the mortgage office be erased and cancelled, and for
general relief.

[1] JUDGMENT.

In this cause, submitted to the court for adjudication, for the reasons
orally assigned by the court, the law and evidence being in favor of plain-
tiffs —

It is ordered, adjudged and decreed, that there be judgment in favor of
plaintiffs, The Citizens' Bank of Louisiana, and against the board of assessors
of the parish of Orleans and James D. Houston, tax collector for the upper
district for the parish of Orleans, decreeing the assessment for the year
1886 standing against the banking house or real estate in the square bounded
by Gravier, Camp, Poydras and St. Charles streets, assessed at seventy-five
thousand dollars, or on 10,500 shares of the capital stock at $42.75 per share,
aggregating an assessment of $448,875, null and void and of no effect,
and same be cancelled and erased from the books of their respective offices,
and that any inscription of the same in the mortgage office be cancelled and
erased, and costs of suit.

Judgment rendered March 3, 1887.
Judgment signed March 10, 1887.

but is reduced, and the board of assessors are entitled when property is omitted for any reason to immediately make up a supplemental roll correcting the error. Acts of 1884, sec. 2, p. 136.

If, therefore, the court had concluded that there was an excessive or irregular assessment it could not have rested its decree upon that ground, because, as the tax could have been reduced, or, in case of irregularity, have been assessed, the issues necessarily required a decision of the question of exemption *vel non.* In other words, if the court had found that the tax was excessive or irregular, to have so decreed would not have passed upon the issue before it or terminated the controversy. In this connection it is worthy of remark that the record discloses that from the date of this judgment no supplemental roll of any kind assessing the bank for the tax of 1886 was made. But under the statutes of Louisiana, if the judgment had proceeded upon an irregularity in the assessment, the plain duty of the board was to comply with the statute and make the supplemental roll. The fact that no such roll was prepared is a conclusive demonstration that the judgment was based on the claim of exemption, which rendered it impossible that the new roll should be made out.

The judgment rendered for the tax of 1887 is, if it were possible, even more conclusive of the identity of the issue than the one rendered for the taxes of 1886. In that case the suit was brought by the bank, not to assail an assessment which had been actually made, but to enjoin the making of any assessment against it whatever. The petition which is set out in the margin[1] stated no ground for relief other than the claim

---

[1] No. 20541. — PETITION FILED MARCH 21, 1887.

To the honorable the civil district court in and for the parish of Orleans:

The petition of the Citizens' Bank of Louisiana, a corporation established by law, domiciled in the city of New Orleans, respectfully shows —

That petitioner is exempted by law — all taxation, state or municipal, upon its capital, shares and property of every description, as appears by the act of the legislature of Louisiana, approved April 1, 1833, entitled "An act to incorporate the Citizens' Bank of Louisiana," and especially the thirtieth section of said act, and by the act amendatory of the preceding act, approved January 30, 1836, and especially by the fourth section thereof,

of exemption. Indeed, the very nature of the remedy invoked precluded the possibility of any other ground, since the relief sought related, not to an assessment already made, but to prevent any assessment whatever under the existing law of objects named from being made. How can it be contended that the assertion in the pleadings that there was no power to make any assessment at all of the specified property, was simply a claim that an assessment was irregular? The judg-

---

which acts are specially referred to for fuller explanation and greater certainty.

Petitioner shows that under said charter, as contained in said legislative acts, and in accordance with the conditions thereof, the Citizens' Bank of Louisiana was organized in 1836, with a capital of upwards of ten millions of dollars, then obtained from the subscribers to the capital stock, in accordance with the charter of the bank; that in 1853 additional capital for the Citizens' Bank of one million dollars was obtained from the subscribers thereto under the authority of the act of the legislature of Louisiana for the relief of the Citizens' Bank, being the act No. 141 of 1852 and the act of the legislature of Louisiana No. 246 of 1853, approved April 28, 1853; that the aforesaid original capital obtained in 1836, as well as the said increased and additional capital obtained in 1853, was all furnished and paid to the bank on the faith of its charter, and especially on the faith of the aforesaid exemption in the charter of all the property, stock and capital of the Citizens' Bank, and that, relying on the aforesaid exemptions, the said bank has conducted and is now conducting its banking business.

Petitioner further shows that said acts containing the charter of the said bank, and especially the provisions thereof containing said exemptions from taxation, are contracts under the protection of the articles of the Federal and state constitutions protecting contracts, said articles being article 1, section 10, of the Constitution of the United States and similar articles in the state constitutions, and petitioner further shows that said exemptions have been decreed valid by the courts.

Petitioner further shows that, notwithstanding said exemptions from said taxation and said judgments decreeing the same to be valid, the board of assessors for the parish of Orleans are about to assess the Citizens' Bank upon the assessment rolls for the year 1887 for taxation upon its shares of stock, and upon its banking building and upon the furniture therein used by petitioner for conducting its said banking business, and upon other property possessed by petitioner; that said proposed assessments are without warrant of law, are prejudicial and injurious to petitioner and will cause irreparable injury to petitioner, and it is entitled to an injunction to prohibit and enjoin said assessments.

Wherefore petitioner prays that said board of assessors for the parish of Orleans and the city of New Orleans be duly cited to answer this petition;

ment, a copy of which is reproduced in the margin,[1] was responsive to the issue presented, and enjoined the making of any assessment for taxes for the year 1887. Now, as there was in the case of excess or irregularity lawful power, provided by statute, to make an assessment by supplemental roll, the decree prohibiting any assessment could have rested alone upon a want of power to tax, that is, of exemption, for that cause alone was adequate to justify the relief afforded. It, is shown in the proof that, both as to the taxes of 1886 and 1887, after the two judgments were rendered, there was entered on the official rolls, "cancelled, exempt." The effect of this contemporaneous execution of the judgment cannot in reason be argued away. The additional fact is shown that for five years after these judgments were rendered the board of assessors, in annually making up their rolls, placed the name of the bank on the roll but made no assessment, marking in the place where the assessment should have been the word "exempt." In other words, all the departments of the state

---

that, considering the bond and affidavit herewith filed, a writ of injunction issue, directed to said board, enjoining them and prohibiting them and each member thereof from assessing the Citizens' Bank for taxes, city or state, for 1887, or for any subsequent year upon the capital stock of the Citizens' Bank or the shares thereof, or upon the banking building of petitioner or upon the furniture used therein, or upon any other property of petitioner; that said injunction be made perpetual, and that said board and the recorder of mortgages be prohibited and enjoined from recording any such assessments in the office of the recorder of mortgages and for general relief.

[1] JUDGMENT.

In this case, submitted to the court upon the evidence and pleadings filed, the law and evidence being in favor of plaintiff, it is ordered, adjudged and decreed that the injunction herein issued on the 21st day of March, 1887, be now made perpetual, and that the board of assessors for the parish of Orleans and the members thereof be enjoined and prohibited from assessing the Citizens' Bank for taxes, city or state, for the year 1887 upon its capital stock on the shares thereof or its property, and that said assessment, if made, be cancelled from the books of assessments for the year 1887, and that the recorder of mortgages for the parish of Orleans be, and he is hereby, enjoined from receiving said assessment upon the books of his office.

Costs herein be paid by defendants.

Judgment rendered April 27, 1887.

Judgment signed May 3, 1887.

and municipal government having tested the question of exemption before the courts and having been defeated recognized the fact, and for a series of years treated the judgments as concluding the question of exemption.   The effect, therefore, of the claim now made is, in substance, to disregard the pleadings, to disregard the necessary effect of the decrees and to repudiate their execution contemporaneously made and followed by years of official conduct.   The fact that the petition of the bank, filed in 1887, after alleging the exemption, contained the general averment that " said proposed assessments are without warrant of law and prejudicial and injurious to petitioner," does not furnish reason for saying that other reasons than the exemption may have been (in consequence of the use of these words) presented for adjudication.   The quoted sentence was not traversable and was a mere legal conclusion from the facts previously alleged, that is, the exemption of the bank under its contract.

It results from the foregoing that the two judgments rendered after the expiration of the original charter necessarily adjudged the claim of exemption upon identically the same facts and conditions as those here presented, and they therefore are conclusive unless the proposition be sound that a claim for taxes for one year being a distinct cause of action from the tax for a subsequent year, the judgment holding that the tax of the prior year cannot be assessed or collected, can never be the subject of the thing adjudged as to the tax for the future year, however absolute may be the identity of the defence and of the facts upon which the defence is founded.

There is difficulty in meeting the argument by which the foregoing proposition is supported, because the reasoning commingles and treats as one, two distinct and different questions.  For instance, the argument that because a tax of one year is a different cause of action from the tax of a subsequent year, therefore a demand for a tax of a subsequent year can never be concluded by the thing adjudged in the prior year, admits the relevancy of *res judicata* to demands for taxes, but contends that wherever there are different demands the thing adjudged has no application, although the last demand may

depend upon a question which has previously been determined under the same facts and circumstances. On the other hand, the reasoning that this must be the rule, because it would be intolerable to recognize that a judgment as to the tax of one year could be conclusive as to the tax of a subsequent year, has for its basis the proposition that as a matter of public policy and public necessity the principles of the thing adjudged can never apply to taxation. In considering the question we separate at once these two conflicting contentions and examine first the proposition that because a tax of one year is a different demand from the tax of a subsequent year, therefore *res judicata* as to one can never apply as to the other, and the second question of whether as a matter of public policy the thing adjudged applies to taxes at all.

The proposition that because a suit for a tax of one year is a different demand from the suit for a tax for another, therefore *res judicata* cannot apply, whilst admitting in form the principle of the things adjudged, in reality substantially denies and destroys it. The estoppel resulting from the thing adjudged does not depend upon whether there is the same demand in both cases, but exists, even although there be different demands, when the question upon which the recovery of the second demand depends has under identical circumstances and conditions been previously concluded by a judgment between the parties or their privies. This is the elemental rule, stated in the text books and enforced by many decisions of this court. A brief review of some of the leading cases will make this perfectly clear.

In *Bank* v. *Beverley*, 1 How. 134, 139, it was held that a construction of a will affecting the rights of parties must govern in subsequent controversies between the same parties, without reference to the different nature of the demands. In *Tioga Railroad* v. *Blossburg & Corning Railroad*, 20 Wall. 137, and *Mason Lumber Co.* v. *Buchtel*, 101 U. S. 638, it was held that when the proper construction of a contract was in controversy, the construction adjudged by the court would bind the parties in all future disputes.

In *Cromwell* v. *Sac County*, 94 U. S. 351, 353, after a full

statement of the nature of the estoppel resulting from the thing adjudged where the demand was the same in both cases, the court then considered the extent of the estoppel, where the causes of action were distinct, and said (p. 353):

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to the matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

It is unnecessary to multiply citations of authority, as the subject has been quite recently fully considered and passed upon by this court. In *Last Chance Mining Co.* v. *Tyler Mining Co.*, 157 U. S. 683, where an estoppel resulting from the thing adjudged was enforced, this court said (p. 687):

"The law in respect to estoppel by judgment is well settled, and the only difficulty lies in the application of the law to the facts. The particular matter in controversy in the adverse suit was the triangular piece of ground, which is not the matter of dispute in this action. The judgment in that case is therefore not conclusive in this as to matters which might have been decided, but only as to matters which were in fact decided. *Hopkins* v. *Lee*, 6 Wheat. 109; *Smith* v. *Kernochen*, 7 How. 198; *Pennington* v. *Gibson*, 16 How. 65; *Stockton* v. *Ford*, 18 How. 418; *Washington &c. Steam Packet Co.* v. *Sickles*, 24 How. 333; *S. C.* 5 Wall. 580; *Lessee of Parrish* v. *Ferris*, 2 Black, 606; *Cromwell* v. *County of Sac*, 94 U. S. 351; *Davis* v. *Brown*, 94 U. S. 423; *Russell* v. *Place*, 94 U. S. 606; *Campbell* v. *Rankin*, 99 U. S. 261; *Lumber Co.* v. *Buchtel*, 101 U. S. 638; *Stout* v. *Lye*, 103 U. S. 66; *Nesbit* v. *Riverside Independent District*, 144 U. S. 610; *Johnson Company* v. *Wharton*, 152 U. S. 252."

And the law of Louisiana is exactly in accord with the rulings of this court, for, as said by the Supreme Court of Louisiana in *Heroman et al.* v. *Louisiana Institute of Deaf & Dumb et al.*, 34 La. Ann. 805, 814:

" No principle of the law is more inflexible than that which fixes the absolute conclusiveness of such a judgment upon the parties and their privies. Whether the reasons upon which it was based were sound or not, and even if no reasons at all were given, the judgment imports absolute verity, and the parties are forever estopped from disputing its correctness. Cooley on Const. Lim. p. 47 *et seq.*, and authorities there cited.

" 'Matters once determined in a court of competent jurisdiction may never again be called in question by parties or privies against objection, though the judgment may have been erroneous and liable to, and certain of, reversal in a higher court.' Bigelow Estoppel, 3d ed., Outline, pp. lxi, 29, 57, 103.

" 'The estoppel extends to every material allegation or statement which, having been made on one side and denied on the other, was at issue in the cause, and was determined therein.' *Aurora* v. *West*, 7 Wall. 102; 4 N. Y. 113; 2 An. 462; 14 An. 576; 19 La. 318; 5 N. S. 664; 11 M. 607; 14 La. 233; 5 N. S. 170."

It follows, then, that the mere fact that the demand in this case is for a tax for one year and the demands in the adjudged cases were for taxes for other years, does not prevent the operation of the thing adjudged, if, in the prior cases, the question of exemption was necessarily presented and determined upon identically the same facts upon which the right of exemption is now claimed.

The argument that as a matter of public policy the principle of the thing adjudged should be held not to apply to controversies as to taxation, if there be merit in it, should be addressed to the lawmaking and not to the judicial department. But if the judicial mind could entertain the suggestion, it seems clear that it is without real merit. In its ultimate aspect it asserts that no question concerning government or public authority ought ever to be submitted to judicial inves-

tigation.. Indeed, the contention is that there is no power in courts of justice to consider any question of taxation or render any judgment in relation thereto. That this is the result of the proposition is manifest from the fact that the very essence of judicial power is that when a matter is once ascertained and determined it is forever concluded when it arises again under the same circumstances and conditions between parties or their privies. To admit the judicial power on the one hand, and to deny on the other the very substance and essence of such power, is not only contradictory, but destructive of the fundamental conceptions upon which our system of government is based. Under this theory the cause under consideration should not be entertained, but should be dismissed. Accepting the argument in its full consequence, every judgment rendered by this court from the foundation of the government, declaring a particular tax or burden unconstitutional, imports no efficacy whatever. Every decree of this court enforcing taxation in order to discharge obligations previously contracted, where the right to the tax was a part of the obligation, is deprived of the sanctity of the thing adjudged, for manifestly if the estoppel of the thing adjudged does not arise from a judgment preventing taxation, such an estoppel cannot also result from a judgment enforcing taxation.

It is contended, however, that the asserted theory finds support in two authorities, one a decision of this court, *Keokuk & Western Railroad* v. *Missouri*, 152 U S. 301, and the other, *Davenport* v. *Chicago, Rock Island &c. Railway*, 38 Iowa, 633, 640. But that these authorities do not sustain the contention is demonstrable. In the *Keokuk case* the court held that the controversy which it decided was not between the same parties as was the controversy in the case wherein the judgment was rendered which was relied upon as *res judicata*. The two judgments not being between the same parties, there could have been and was no necessity for deciding whether, if the judgment had been between the same parties or their privies, it would have been *res judicata*. True it is, that in the *Keokuk case* the opinion *arguendo* discusses the question of whether a judgment against the validity of a tax for one

year would be a bar to a suit for taxes for a subsequent year. But that this reasoning was not considered as relating to a case where the validity of the tax was resisted on a particular ground, which particular and special defence had been previously held between the same parties to be valid under identically the same conditions and circumstances, becomes clear when the context of the opinion is examined, and it is discovered that it approves and quotes the case of *Cromwell* v. *Sac County*, the opinion in the *Keokuk case* saying : "If there were any distinct question litigated and settled in the prior suit, the decision of the court upon this question might raise an estoppel in another suit upon the principle stated in *Cromwell* v. *Sac County*, 94 U. S. 351." To seek, then, to avail of the general language used in the opinion in the *Keokuk case* without taking note of the circumstance that it was there said that the estoppel would exist even as to a tax in a case like this is, in reason, to misinterpret the opinion and make it cover the very case which it in express language declared it was not intended to govern. It may also be conceded that language was used in the course of the opinion in *Davenport* v. *Chicago, Rock Island &c. Railway, supra,* which is susceptible of the interpretation that under no circumstances, even between the same parties, would a judgment as to the tax of one year operate as the thing adjudged as to the tax of a future year. But that case stands alone, and the language therein used has been since, if not repudiated, at least qualified by the Supreme Court of Iowa to the extent necessary to bring that case in harmony with the true and universal doctrine so often laid down by this court. In *Goodenow* v. *Litchfield*, 59 Iowa, 226, where the *Davenport case* was pressed as an authority upon the Supreme Court of Iowa, that court in an opinion on a rehearing said:

"It is undoubtedly true that the taxes of each year ordinarily constitute separate and distinct rights or causes of action. But where an action is brought to recover taxes paid in one year, and an action is afterwards brought to recover for the taxes paid in a subsequent year, and the adjudication in the first is pleaded as a bar to the recovery in the second

action, the question whether the estoppel is effectual will depend upon the issues in the two actions.

"If the right to recover and the defence thereto are based upon precisely the same ground, why litigate again the question that has been determined? In such case the very right of the matter has been determined by a court of competent jurisdiction. It is not essential that the causes of action should be the same, but it is essential the right or title should be; that is, the issues in both actions and the matter on which the estoppel depends must be the same, or substantially so. The very matter or thing which it is sought to litigate must have been adjudicated in the prior action. In such case the bar or estoppel is complete. This rule will not, we think, be disputed. Therefore authorities are not required in its support, but see *Merriam* v. *Whittemore*, 5 Gray, 316."

It follows, then, that the theory by which it is sought to take questions of taxation entirely out of the reach of the rule of the thing adjudged is not only without foundation in reason, but is also without support of authority, since the case from this court, which is cited to sustain it, cannot properly be said to maintain the contention, and the other from the Supreme Court of Iowa has been either overruled or qualified.

The only question then remaining to be determined is, to what subjects of taxation does the estoppel of the thing adjudged apply, for it extends only to the matters which are necessarily concluded by the judgment. It is clear upon the face of the records and judgments which are relied upon to constitute *res judicata* that the only questions therein presented and decided were the non-liability of the bank for taxation on its capital, its banking house, and furniture acquired for the purposes of its banking business, and to a tax levied *eo nomine* on its shareholders, with obligation imposed by the taxing law on the bank to pay the tax. These items, however, embrace only the subjects of taxation mentioned in the first of the enumerations which we at the outset made, and do not include the objects embraced in the other three. The thing adjudged, therefore, on the face of the records and

judgments does not conclude three of the general subjects of taxation as to which the court below decreed the bank not liable for taxation. The argument, however, is that although the objects embraced in the last three headings are not apparently within the estoppel resulting from the thing adjudged, they are nevertheless substantially so, for it is said as the thing adjudged determined that the bank under its contract cannot be taxed, the principle thus established carried the other items with it. The contention is unsound, and to demonstrate that it is we will examine briefly the three items referred to, which are embraced in the second, third and· fourth headings. They are as follows:

*Second. That the stockholders of the bank are not liable for assessment on their shares of stock.* The doctrine that an exemption of the capital of a corporation does not, of necessity, include the exemption of the shareholders on their shares of stock is now too well settled to be questioned. *Bank of Commerce* v. *Tennessee*, 161 U. S. 134, 146; 163 U. S. 416.

Indeed, the judgment of the Supreme Court of the State of Louisiana in *Citizens' Bank* v. *Bouny, supra*, expressly noted this distinction, and the opinion on the rehearing expressly held, not that the shareholders could not be taxed, but that even although they could be, the law could not lawfully impose, under the exceptional nature of the charter of the Citizens' Bank, the duty on the bank to pay the tax. Moreover, in the *Bouny case* the Supreme Court of Louisiana held that the bank was without authority to champion the rights of its stockholders, and the bill in this case is filed in behalf of the bank alone, and is predicated solely upon the theory that the bank was entitled to attack the tax because of the absolute duty imposed upon it to pay. The decree below, therefore, which held that the stockholder could not be taxed because of the contract right of the bank, conflicted with the settled rules of law, and accorded the complainant a right to which it was not entitled, although under the authority of the thing adjudged the non-liability of the bank to taxation as to certain objects of taxation be fully established.

*Third. That the bank was also not subject to taxation on any*

*real estate held by it, which had been mortgaged to secure stock subscriptions or stock loans and had become the property of the bank under foreclosure proceedings, because property so acquired became by virtue of the purchase by the bank a part of its capital stock.* The argument by which it is asserted that this right is embraced within the contract, and therefore is covered by the thing adjudged, may be thus briefly stated. The thing adjudged, it is said, establishes that the capital of the bank is non-taxable, and where the capital cannot be taxed, that in which the capital is invested becomes a part of the capital, and therefore cannot be taxed, and authorities are cited which, it is claimed, support this proposition.

But conceding *arguendo* the correctness of the premise it begs the question for consideration, since it assumes that the capital of the bank was invested in the debt which the stock mortgages secured. The stock mortgages guaranteed the payment of the subscriptions to the stock, and these mortgages with the obligations arising from the subscriptions were pledged to secure the loan from which the capital resulted. In other words, the stock subscriptions and mortgages, instead of drawing away the capital and therefore being an investment into which the capital entered, were a mere security on the faith of which the capital was obtained. The review which we have made of the legislation as to the Citizens' Bank makes this clear, and it is additionally fortified by these considerations : The act of 1833 provided for the subscriptions to the stock and for the securing of these subscriptions by mortgage, but the subscriptions were not to produce the capital. On the contrary, the capital was to be obtained by the issue by the bank of bonds, secured by the subscriptions and the mortgages; the money coming from the sale of the bonds to constitute the capital of the bank. Thus the very first section of the act of 1833 says: " That the capital of said bank shall be $12,000,000, to be formed and procured by means of a loan or loans to be made by the directors of said bank." Section 4 of the act, which in detail provides for the making of the loan, says: " That in order to facilitate the directors of said bank in negotiating or obtaining the loan aforesaid, *which is to form*

*the capital thereof.*" La. Acts of 1833, pp. 172 and 175. By the act of 1836 the State provided for the loan of its own bonds to the bank from the sale of which the capital of the bank was to be derived as a substitute for the provision of the act of 1833. But the substitution of state bonds for bonds of the bank, instead of weakening the proposition that the capital was to be derived from the bonds of the bank, strengthens it, for it makes obvious the fact that the State on her credit furnished the capital, taking as security the stock subscriptions and the mortgages. To accept the theory that the subscriptions to the stock and the stock mortgages securing the same were the capital of the bank would necessarily presuppose that the bank was to be carried on without capital, for the subscriptions were not to be paid for a long period of time. Indeed, the whole theory of the act was that the capital being obtained by the bonds the subscriptions would only produce capital when by operation of the provisions of the act they were paid, thereby discharging the obligations of the State. But this operation could not be effectual until either the subscription had been paid or the property mortgaged to secure the same had been actually sold and converted into money, and this was manifestly the view taken by the Supreme Court of Louisiana in the case upon which the defendant in error relies, *Citizens' Bank* v. *Bouny, Tax Collector, supra,* where the court said :

" To enable the bank to obtain its capital, the State loaned its bonds to the amount of several millions, which bonds were put upon the market and sold by the bank, the bank binding itself to take them up at their maturities and to pay the interest thereon as it accrued. In order to secure the State against loss and guarantee the payment of the bonds, the mortgages and pledges given by the stockholders to secure their subscriptions and loans were transferred to the State and the bondholders."

Evidently it was a confusion of thought on this question which led the court below to hold that the property bought in in enforcement of the stock mortgages and held by the bank was the capital of the bank, and therefore not liable to taxa-

tion. In considering the question of whether the capital of the bank was taxable, in one part of its opinion the court said :

"The original charter was granted in 1833. La. Acts of 1833, p. 172. That act contemplated that the capital of the bank, which was fixed at $14,000,000, would be obtained by the issuance by the bank of its own bonds. The subscribers for the stock were to pay nothing upon their subscriptions, but were to furnish mortgages upon cultivated lands and slaves to secure the payment of their subscriptions."

And after speaking of the failure of this plan and the provision of the act of 1836 loaning the bonds of the State to the bank for the purpose of obtaining its capital, the court said : " And the bonds of the State were loaned to the bank as its capital." Whilst taking this correct view of the act in considering the question of whether the capital could be taxed, a directly opposite opinion was held to be the sound one in determining whether the property bought in by the bank in foreclosure of its stock mortgages was a part of its capital, for on that branch of the case the court said : " *The bank had no other capital except the subscriptions by the stockholders secured by stock mortgages.*" We cannot approve a conclusion which rests, on one branch of the case, upon the proposition that the bank had no other capital but the proceeds of the sale of the state bonds, and on another issue in the cause holds that the bank had no other capital but the subscriptions to the stock and the mortgages securing the same. If the asserted rights of the bank as to non-taxation on the one hand arise from the premise that the proceeds of the state bonds were its capital, it cannot derive the advantage resulting from this interpretation of the charter and then immediately reject this construction for the purpose of obtaining an additional advantage by saying that the proceeds of the bonds were not the capital, but that the stock subscriptions and mortgages securing the same alone constituted the capital. That the capital of the bank consisted of the money derived from the sale of the state bonds and not from subscriptions and stock mortgages by which they were secured,

was unquestionably the contemporaneous and continued construction of the statute, results from the fact that the record affirmatively shows that for many years after the charter was adopted the property acquired by the bank under foreclosure of its mortgages was taxed like property of other citizens, and the tax was voluntarily paid. Indeed, it was stated in the discussion at bar, and not denied, that the supposed right of the bank to exemption on property acquired by it under foreclosure of mortgage was for the first time asserted in this suit, and that for the long series of years which had elapsed since the organization of the bank that character of property was regularly taxed and the tax paid.

The claim that because the charter provided that the subscribers should have a right to borrow from the bank on their stock a certain amount of the capital afforded by the sale of the bonds, therefore the stock mortgages constitute an investment of the capital, is likewise without merit. Whatever may have been the obligations of the stockholder to reimburse the money so loaned, and conceding that these obligations were secured on the property mortgaged for the stock subscription, primarily the property upon which the stock mortgage rested was and continued to be, until it was converted into cash and applied to the *pro tanto* extinction of the loan which had furnished the capital, a security for the capital and not the capital itself. The rights of the holders of the bonds and of the State which had furnished the capital necessarily exact this view of the relations between the parties.

*Fourth. That the non-liability of the bank to taxation embraced also immunity from the payment of a license tax to either the State of Louisiana or the city of New Orleans.* We are at a loss to understand by what process of reasoning the decree was made to cover the question of the non-liability of the bank for license. It was not presented by the pleadings, and was entirely *dehors* the issues in the case.

As we conclude that the decree below was in part erroneous we must reverse it. The decree below is, therefore,

*Reversed, and the case remanded with the following directions: First, to enter a decree in favor of the Citi-*

zens' Bank, recognizing and enforcing its non-liability to taxation, state, parochial and municipal, on its capital stock, its banking house and furniture acquired and used for the purposes of its banking business, and on a tax on its shareholders eo nomine, accompanied with a legal obligation on the bank to pay the tax. Second, rejecting the claim of the bank to non-liability of its shareholders for taxation, without prejudice to the rights of the shareholders to resist an assessment for taxation against the shares owned by them unaccompanied with an obligation on the part of the bank to pay, in case such tax should be levied by the laws of Louisiana. Third, rejecting the claim of the bank to non-liability to taxation on the property acquired by it under foreclosure of mortgage — the whole without prejudice to the right of the state and municipal authorities to claim a license tax, should such be imposed by law on the bank, and without prejudice to the right of the bank to assert any legal defences which it may have to the payment of such license tax.

MR. CHIEF JUSTICE FULLER, MR. JUSTICE BROWN and MR. JUSTICE PECKHAM dissented on the ground that the judgments relied on by the appellee are not *res judicata*, although in all other respects they concurred.