## COCKRELL v. BOARD OF COM'RS FOR BURAS LEVEE DIST. et al.

### No. 239.

District Court, E. D. Louisiana.

Sept. 4, 1936.

Herold, Cousin & Herold, of Shreveport, La., for complainant.

A. Giffen Levy, Leander H. Perez, and J. T. Prowell, all of New Orleans, La., for defendants.

BORAH, District Judge.

■ This suit is brought under the Declaratory Judgments Act, Jud.Code § 274d, 28 U.S.C.A. § 400 and note, to obtain a judicial declaration to the effect that the judgment rendered by the Supreme Court of Louisiana in the case of Board of Commissioners for Buras Levee District v. Mt. Forest Fur Farms of America et al., 178 La. 696, 152 So. 497, constitutes a complete bar to any attempt by the defendants to assert or establish title against the complainant to any lands within townships 19 and 20 south, range 26 east, and township 20 south, range 27 east in the parish of Plaquemines, state of Louisiana.

This is a case of actual controversy and the court has jurisdiction to grant the relief. Plaintiff is a citizen of the state of Texas and is the owner of an undivided $127/150$ interest in the mineral rights in the property in controversy. The defendants, Board of Commissioners for the Buras Levee District and its universal successor, the parish of Plaquemines, are quasi-municipal corporations under the law of Louisiana, and hence citizens of the state of Louisiana. The requisite diversity of citizenship is present and the value of the matter here in controversy admittedly exceeds the sum of $100,000. However, it is urged that all parties who were made defendants in the original suit are interested in this controversy and are necessary parties to an action for declaratory judgment.

■ The record in this case discloses that the surface owner and the owner of the remaining $23/150$ interest in the royalty are citizens of states other than Louisiana, consequently neither their presence nor their absence would in any manner affect the jurisdiction. As a matter of fact, the only Louisiana citizen connected with the property, other than defendants, is the Gulf Refining Company of Louisiana, and that company is a mere stakeholder in that it holds leases from both plaintiff and defendants. The same situation prevails with reference to the other oil companies who were made defendants in the original suit, and as will appear by reference to the prayer of the original suit, the only judg-ment sought against the oil companies was restricted to one for royalties under the terms of the lease from the levee board. The absence of the oil company lessees, therefore, cannot affect the jurisdiction. It is plain that plaintiff is an "interested party" within the meaning of the statute and that he has a clear right to invoke the constitutional jurisdiction of this court. Seeley v. Cornell (C.C.A.) 74 F.(2d) 353, 355; Edenborn v. Wigton (C.C.A.) 74 F.(2d) 374, 376.

An examination of the record and proceedings herein, including the pleadings, the respective contentions of the parties, the opinion of the Supreme Court of Louisiana, and the documents specially referred to and forming part of the opinion of the court, clearly reveal what was at issue in the state court and what was there decided.

The following is shown by the opinion of the Supreme Court of Louisiana: The Buras Levee District was created by Act No. 18 of the Legislature of Louisiana of 1894, and by this act the state granted to the board of commissioners created for the district "all lands now belonging or that may hereafter belong to the State of Louisiana, and embraced within the limits of the levee district as herein constituted." Section 11. This act was amended by Act No. 205 of the Legislature of Louisiana of 1910 so as to include specifically all lands owned by the state "by virtue of her inherent sovereignty." The board at various times applied to the proper state officials for formal grants of the state-owned lands within its district, and formal grants were made with the result that practically all the surveyed lands in the district were formally transferred prior to the year 1908. But there still remained within the district a tract which had never been surveyed by government engineers, and as a consequence it was not known whether these lands belonged to the state by virtue of its inherent sovereignty or whether it was entitled to have them transferred to it under the Swamp Land Act of March 2, 1849, 9 Stat. 3.

Acting pursuant to the request of state officials, the surveyor general's office deputized Major Frank T. Payne to make an examination of that unsurveyed area in order to ascertain if there were any lands therein that came within the purview of the swamp land grant of March 2, 1849. The purpose of sending Payne to the ter-

ritory was to ascertain and report the character of the lands involved, and there was no occasion for his attempting to establish the boundaries as they had long since been established by surveys made by the United States government. It was necessary, however, for him to locate the exterior boundaries of the townships previously established in order that he might know the location of the lands to be examined. Payne carried out his mission and made his report, which shows that he thoroughly understood that he was not to establish the exterior boundaries of these unsurveyed townships, and that in accordance with his instructions he did not attempt to do anything other than locate the lands to be examined by reference to the old surveys as shown by the field notes furnished him. The maps forming part of his report showed the boundaries of the many bayous and bays and the land area in each section of each of the townships. However, the information which enabled him to make this showing was compiled from data furnished by the United States Coast Geodetic Department and from surveys which he had made for the Oyster Commission of Louisiana. Payne reported that he found the lands "to be almost impassable marsh, subject to tidal overflow, and in their present condition, utterly worthless." On the strength of this report and the maps, the Commissioner of the General Land Office ruled that the lands lay below the high-water mark of the Gulf of Mexico and were owned by the state by virtue of its inherent sovereignty and so informed the state authorities. Thereupon, the maps were filed at the office of the register of the state land office and were approved by the Governor as maps of state property. Subsequently there was transferred to the Buras Levee Board by the proper officials of the state every acre (except section 16) shown as land or marsh area on the Payne plats. The certificate of conveyance covered 44,175.50 acres of land in townships 19 and 20 south, range 26 east, and township 20 south, range 27 east, including the following: 213 acres in section 11, 8 acres in section 12, and 563 acres in section 13, township 20 south, range 26 east. Later, at a sale conducted in accordance with the statutes of the state, the levee board sold to J. Homer Jordan, trustee, every acre described in the act of conveyance from the state officials to the levee board; the only difference in the description being that in the deed to Jordan the subdivision of the sections in which the land is located is given. The lands acquired by Jordan finally passed by mesne conveyances to the Mt. Forest Fur Farms of America, which granted mineral leases thereon to Cockrell and the Moran Corporation of the South. These, in turn, subleased to certain oil companies with rights to develop. These companies drilled and brought in several producing oil wells on land which according to the Payne maps and plats are in section 25, township 20 south, range 26 east.

After the discovery of oil on the property, the levee board concluded that the Payne plats under which it had bought and sold the land were erroneous, and it employed a Mr. Washburn to make a resurvey of the entire territory. According to Washburn's survey and plats, sections 11, 12, and 13 in township 20 south, range 26 east, are practically all land, and not water as shown by the Payne plats, and consequently Washburn shows a greater acreage in each of these sections than is shown by the Payne plats. Accepting this ex parte survey as correct, the levee board proceeded on the theory that the state had failed to convey to it all the lands it owned within the three townships, and on October 9, 1928, obtained from the register of the state land office a patent conveying these additional lands as shown by the Washburn plats including the following in township 20 south, range 26 east: Section 11, 427 acres; section 12, 632 acres; and section 13, 77 acres. It thereupon brought a petitory action to have its title to the above-described lands in these three sections recognized and set up this purported conveyance in 1928 as a foundation of its suit. Its demand was based entirely on its proposition that there had been omitted from the conveyance to the levee board and from the conveyance by the levee board to Jordan some part of the marsh area within those townships. Cockrell answered denying that the attempted conveyance ever had any legal force or effect, and expressly set up that said instrument was null and void because the levee board had sold to Jordan all of the lands belonging to it within the townships involved.

This was the paramount issue in the case and was distinctly decided in favor of petitioner herein; the Supreme Court holding that the conveyance to the levee board had included every acre of marsh

land within those townships (except section 16), and that the sale by the levee board to Jordan had included all of the land acquired by it from the state. Consequently, it was held that the levee board could set up no claim to title to any land within townships 19 and 20 south, range 26 east, and township 20 south, range 27 east, for the reason that it had previously disposed, to Cockrell's ancestor in title, of every foot of land to which it was entitled in that area. In order for the levee board now to claim any land against Cockrell within the townships, it would have again to assert that lands had been omitted in the sale from it to Jordan. It would from the nature of things have to sue upon the same title, upon the same claim, upon the same demand, upon the same cause of action. That issue may not again be litigated. The judgment of the Supreme Court of Louisiana completely bars the defendants herein from now asserting title as against Cockrell to any portion of the lands within these three townships. Heroman v. Louisiana Institute, 34 La.Ann. 805, 813; New Orleans v. Citizens' Bank, 167 U.S. 371, 398, 17 S.Ct. 905, 42 L.Ed. 202; Southern Pacific Ry. Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 42 L. Ed. 355; Speakman v. Bernstein (C.C.A.) 59 F.(2d) 523.

Consequently, the plaintiff herein is entitled to a declaration declaring that the final judgment of the Supreme Court of Louisiana constitutes a complete bar against the assertion by the defendants as against the plaintiff of title to any land within the townships here in question.

A decree to this effect may accordingly be entered.